FARMERS ELEVATOR COMPANY, Appellant, v. CHARLES REDDIX et al., Appellees.

**CONTRACTS: Oral Followed by Written Contract.** An oral contract of sale of a certain subject-matter is wholly merged by a subsequent written contract of sale of the same subject-matter, and such merger excludes all oral evidence of such former contract.

**ESTOPPEL: Sale of Lien-Incumbered Property.** A landlord is not estopped to assert his right to his rent share of the tenant's crop, nor is a mortgagee of the tenant's share of the crop estopped to assert his lien, by consenting to or authorizing a sale which was never consummated. Such consent or authorization cannot be held to attach to a subsequent, unauthorized, and unknown sale by the tenant, and especially so when the contract governing such subsequent sale was quite indefinite as to its subject-matter.

*Appeal from Monona District Court.*—W. G. SEARS, Judge.

FEBRUARY 17, 1919.

ACTION in replevin to recover the possession of 4,000 bushels of corn. The right of possession was claimed by virtue of a contract of purchase of same from defendant

Reddix. Reddix had a three-fifths share of the corn, as the
tenant who raised the same. The defendant Henning had
a two-fifths share thereof, as the landlord of Reddix. The
defendant Turin Savings Bank had a mortgage on the three-
fifths interest of Reddix. The defendants denied the al-
leged contract of purchase. At the time of the service of
the writ of replevin, the mortgagee and the landlord gave
a delivery bond, and took possession of the property. By
cross-petition, the mortgagee asked the enforcement and
foreclosure of its mortgage. At the close of the evidence,
the trial court directed a verdict against the plaintiff, and
awarded possession to the mortgagee and to the landlord.
The plaintiff appeals.—*Affirmed.*

*Oliver & Allen,* for appellant.

*Prichard & Prichard* and *C. E. Cooper,* for appellees.

Evans, J.—The plaintiff alleged that, on January 26,
1917, it purchased the corn in question by oral contract;
that it was so purchased for future delivery, on or about
July 1st; that, in April following, the con-

1. CONTRACTS :
oral followed
by written
contract.

tract was reduced to writing, and that the
written contract was made to bear the date
January 26, 1917. It claimed its right of
possession by virtue of both the oral and the written con-
tract. The defendants filed separate answers. Reddix filed
a general denial, but admitted that he had orally contracted
to sell the property on January 26th, for immediate deliv-
ery, and within ten days, and averred that the plaintiff
failed and refused to receive the same within such time.
He admitted the execution of the written contract pleaded,
but denied its validity, and averred a want of considera-
tion. He also pleaded, in effect, that, at the time of the be-
ginning of the suit, the right of possession of the corn was
in his codefendants, the mortgagee and the landlord, and

that he had no control over the same. Henning, by answer, set up his claims as landlord, and the Turin Savings Bank, defendant, set up its claim as mortgagee. There was also a plea of the statute of frauds.

On the trial, the plaintiff called the defendant Reddix as a witness, and undertook to prove by him the oral contract pleaded. The testimony thus elicited from Reddix was in accord with his pleading, already noted. Thereupon, the plaintiff introduced other oral evidence tending to support the allegations of its petition as to an oral purchase. It also introduced oral evidence to the effect that, in April following, the said oral contract was reduced to writing. The writing was introduced in evidence, and was as follows:

"This agreement witnesseth: That I have this day sold to Farmers Elevator Company, of Onawa, Iowa, 4,000 to 4,500 bushels of good, sound, dry, merchantable No. 3 yellow or No. 3 white shelled corn. To grade $\overline{\text{No}}$. 3 w or 3 y or better, at 91 per bushel, the same to be delivered by me to it in its cribs, bins or elevator at Onawa, Iowa, as they may direct. The said grain to be in a good merchantable condition, free from snow or rain, and delivered on or before the first day of July, 1917, at their option. I agree that this contract may be either extended or canceled at its expiration by the buyer, if the grain herein specified is not delivered in the specified time. I further state that I am the sole owner of said grain, and that the same is now located on the land known as the ———— farm in ———— Township, ———— County, Iowa, and that same is free from and clear of all liens and incumbrances whatsoever.

"I make this statement for the purpose of obtaining credit and securing whatsoever sum of money may be advanced upon this contract, either at this date or at any time between this date and the delivery of said grain. If default be made in the delivery of said grain the said

Farmers Elevator Company or its representative may, without suit, take possession of same wherever found, and market the same at my expense, and after paying all expenses, moneys advanced with interest, etc., the balance if any, shall be paid to me.

               "[Signed]   Charles Reddix.

"Accepted:             "Farmers Elevator Co.

                  "By A. D. Post.

"Dated this 26th day of January, 1917."

The plaintiff also introduced evidence tending to show that, in January, the defendant Henning had written Reddix, his tenant, directing him to sell his corn immediately; also, evidence tending to show that, in February, the Turin Savings Bank had called the plaintiff by phone, and had inquired whether the plaintiff had bought Reddix' corn; that the plaintiff answered such question in the affirmative; that the bank officer then advised the plaintiff that the bank had a mortgage, and that he there consented that the consideration might be paid to Reddix, and that the bank would trust Reddix to bring the same to it.

The plaintiff takes the unique position of claiming under its alleged oral contract of January 26th, and under its written contract of April. It goes without saying that, if it had a good written contract, it had no need to rely on the oral contract. It goes without saying, also, that, if the oral contract was reduced to the writing which was introduced in evidence, then the oral was merged in the written, and the existence of the written contract would exclude evidence of the oral. There was no competent evidence of the oral contract of January 26th, except the evidence of Reddix. Under that evidence, the sale was for immediate delivery within ten days, and 2. ESTOPPEL: sale of lien-incumbered property. the plaintiff proved unable to receive such corn at such time, for want of cars in which to ship the same. Under the undisputed

competent evidence, therefore, the oral contract of January 26th had fully terminated, by reason of the default of the plaintiff itself.    Such oral contract having terminated, plaintiff's plea in estoppel against the defendant mortgagee and the defendant landlord falls to the ground.    The landlord had directed an immediate sale.    The contract of January 26th, as testified to by Reddix, was such.    Such direction by the landlord to his tenant, however, did not authorize the tenant to enter into an executory contract for long delayed delivery.    There is no other evidence that tends in any manner to bind the landlord to any other contract than that of January 26th.    It does not appear that he had any knowledge of the written contract entered into in April. The same may be said as to the mortgagee bank.    Being informed by the plaintiff in February that it had bought Reddix' corn, it assented to the sale.    If that contract of purchase had been performed by the plaintiff, it might well claim its conversation with the mortgagee as an estoppel; but such conversation, had in February, as to a purchase already made, would not be effective to subordinate the right of the mortgagee to the subsequent contract, entered into in April.

Turning now to the writing which was entered into in April, and which is above set forth, it cannot be enlarged or qualified by oral evidence.    Oral evidence was introduced by the plaintiff, to the effect that this contract was intended to reduce the former contract to writing; but such oral evidence was no more admissible after the execution of the writing than it was before.    The writing is its own evidence, and speaks for itself.    It will be noted that the writing does not purport to be in confirmation of any other contract.    Furthermore, it does not purport to describe the particular property possession of which is claimed herein, nor does it purport to identify or describe any particular property.    No location is specified.    A delivery by

Reddix of 4,000 bushels of corn from whatever source would fully answer the call of the written contract. This is doubtless the reason why the plaintiff has found it necessary to attempt proof of its oral contract; notwithstanding the existence of its written one. Upon the record before us, the plaintiff must stand upon its written contract, and upon that alone. Even if we assume that, as between it and Reddix, and in the absence of superior claims of the mortgagee and landlord, it were' sufficient to give .the plaintiff .the right of possession, yet Reddix is himself without right to deliver possession. As to two fifths of the property, the landlord has a superior right. As to the other three fifths, the mortgagee has the superior right. Such was the holding of the trial court. The judgment below· is, therefore,—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.