G. T. JUNKIN, Appellee, v. HARGROVE & ARNOLD, Appellants.

EVIDENCE: Parol as Affecting Writings—Meaning of Words. When, after a written contract was signed, but *before delivery,* an additional clause, in plain and simple language, was inserted after the signatures, oral testimony is inadmissible (in the absence of fraud or conditional delivery) to the effect that it was agreed that the added clause should carry a meaning different from what the words clearly implied.

NEW TRIAL: Grounds—Passion and Prejudice. The fact that the issue on trial on conflicting evidence involved a commonplace matter of fact may quite clearly discredit the claim that the verdict was the result of passion and prejudice.

TRIAL: Instructions—Applicability to Pleadings. Instructions relative to an implied warranty in the sale of goods are properly refused when the pleadings carry no such issue.

*Appeal from Dallas District Court.*—J. H. APPLEGATE, Judge.

OCTOBER 19, 1923.

REHEARING DENIED JANUARY 18, 1924.

ACTION at law, to recover the amount due on a promissory note given for the purchase of two pure-blooded Holstein bull calves. A counterclaim was filed, alleging the unsoundness of one of the calves. Verdict for plaintiff, and defendants appeal.—*Reversed.*

*Clarke & Cosson* and *Harold H. Newcomb*, for appellants.

*E. W. Dingwell*, for appellee.

FAVILLE, J.—Both parties to this action are breeders of pure-blood Holstein-Friesian cattle. On February 13, 1919, the appellants purchased certain cows from the appellee. A written contract was entered into between said parties, the material portion of which is as follows:

"Both parties of the second part also agree to purchase of the first party for a price of at least $500.00 each two bull calves dropped by above mentioned cows last season, and to take them not later than January 1, 1920, this is contingent on whether the cows above mentioned pass the test as provided above."

Said contract was signed by both parties; and on the same instrument, and below the signatures, was added the following, in writing:

"Signature of the party of the second part is placed hereon with the understanding that the bull calves mentioned in Paragraph 4 above are to be delivered on or before January 1, 1920, in sound physical condition, and free from tuberculosis. From this date, the bull calves mentioned are to receive first-class care and feed so that they will show good growth."

This action is brought to recover on a promissory note given as part of the purchase price of the animals purchased by the appellants. The appellants file a counterclaim under the written contract, and contend that one of the bull calves therein referred to, known in the record as Ideal Beets Burke, was tested for tuberculosis about a month after it was delivered to the appellants, and was condemned and killed by Federal authorities, and that the post-mortem revealed the animal to be seriously afflicted with tuberculosis. Damages were sought by appellants for the difference between the reasonable value of said animal

as a pure-bred Holstein bull, suitable for breeding purposes, and the amount secured for the animal under condemnation.

I.   Upon the trial of the case, the appellee, as a witness in his own behalf, testified that the contract in question was signed by the parties before the writing above set forth was added thereto, and before the said contract, which was in duplicate, had been delivered, and testified that, at said time and under such conditions, the written addition to the contract was made. Referring to one of the appellants, he was then asked, "What did he say to you was necessary to comply with that contract, if anything, at that time?" Objection was interposed to this interrogatory as being "incompetent, irrelevant, and immaterial, the statement below itself is perfectly clear and self-explanatory, and seeking to vary the terms." The objection was overruled, and the witness answered:

1. EVIDENCE:
parol as affect-
ing writings:
meaning of
words.

"He said that to be free from tuberculosis here was the term I had reference to what it meant."

He was then asked:

"Did you particularly ask him about that?"

The same objection being interposed and overruled, the witness answered:

"Yes, sir.  He said if the calves were tested before they were shipped and passed a clean test before they were shipped, he would accept them and pay for them."

Appellee's son, who was present at the time, testified:

"Q.   What was said by your father to Mr. Arnold in regard to that extra on the bottom?  (Objected to as incompetent, irrelevant, immaterial, not the best evidence, the writing itself is the best evidence, being clear, and the question seeking to vary, modify, and change the terms of a written contract. Overruled.  Exception saved.)

"A.   My dad asked him what it meant.   Q.   What did he say?  (Same objection.  Same ruling.)   A.   He told him they had to pass the tuberculosis test.  Dad asked him if they had to pass it, and he said they did.  He asked him if one test would do, and he said, 'Yes.' "

The court instructed the jury on this subject, as follows:

"You are further instructed, however, that, if the parties

to said contract, after same was written below the signatures, had an agreement or understanding as to the meaning of said provision of said contract, in substance and to the effect that, if plaintiff would have said calves tested for tuberculosis, and that they stood the test, that the defendants would receive said bulls as a full compliance with the provisions of said contract that said calves were free from tuberculosis at the time they were to be delivered, on or about January 1, 1920, such construction is binding on said parties."

It was appellee's contention that the animal in question was tested for tuberculosis by a veterinarian, immediately prior to the time it was shipped to the appellants, and that it did not react to said test at said time, and that this indicated that it was then free from tuberculosis, and that this was all that was required under the oral "understanding" between the parties. Appellants' contention was that the condition of the animal as shown by the post-mortem examination was such as to strongly indicate that it must have been diseased at the time it was shipped, and appellants offered evidence of expert witnesses to sustain this contention.

Appellants' contention at this point was that, if the animal in fact was affected with tuberculosis at the time of shipment, the contract was breached.

Appellee's contention was that the only question was whether or not the animal reacted to a test for tuberculosis at that time. Appellee's version of the matter is expressed in his own testimony, wherein he says, on cross-examination, respecting the alleged oral agreement and his understanding thereof:

"Even if he had tuberculosis, if he passed a clean test, I was to ship him and receive my money. If he did not pass a clean test, he was my calf. Q. You mean to say you were to get your money regardless of the condition of the animal, and wholly on what the test showed? A. That is exactly what I mean. Q. That is what you are telling the court and jury? A. Yes, sir."

It is apparent that appellee's contention respecting the oral "understanding" between the parties differs radically from the terms of the written contract.

Should the court have sustained the appellants' objection to this testimony in behalf of the appellee?

The rule that prohibits the introduction of evidence of a contemporaneous parol agreement to change, vary, or contradict the terms of a written instrument is too well founded in the law to require citation of authorities to support it. Appellee's claim is, however, that the rule is avoided in this case, because of his contention that the written contract had been signed by both of the parties before the addition was made thereto respecting the condition of the animal in regard to tuberculosis, and that he was entitled to prove the *oral* understanding at the time said written addendum or modification of the original contract was made.

The difficulty with appellee's position at this point is that all of this took place before the contract was delivered, and that the alleged oral ''understanding'' was contemporaneous with the written addition that was made to the contract. True, this was made after the contract as originally drawn had been signed, but it was all part of the same transaction, and pertained to the same subject-matter, and took place before the contract as amended was delivered. The situation is quite similar to the one before us in the case of *Singmaster & Son v. Robinson*, 181 Iowa 522, wherein we said:

''The defendant also offered to testify to an oral waiver of the qualifications of the written guarantee immediately after the same was signed, and before the notes and mortgage were signed. He also offered to testify that he would not have signed the notes and mortgage except for such oral waiver. Manifestly, the written bill of sale, including the guarantee, and the notes and mortgage for the purchase money were all parts of the same transaction. They were all made and delivered at the same sitting. If the vendor made any oral statements or agreements after the signing of the contract and before the signing of the note, they were, in legal effect, contemporaneous with the writing. They were, therefore, properly rejected on that ground.''

So, in this case, manifestly the written contract and the notes for the purchase price were all part of the same transaction. They were all made and delivered at the same time.. The

written portion of the contract with reference to the condition of the animal with regard to tuberculosis was made a part of the contract. True, it was added thereto after the contract as originally drawn had been signed, but before delivery, and it was all a part of the same transaction, and accepted by each of the parties by the delivery of the contract. It was as binding upon them as though it had been incorporated in the original writing. It could not be varied and modified by a contemporaneous parol agreement claimed to have been made at the very time this portion of the contract was executed, and contrary to its express provisions. This portion of the contract was not ambiguous. It was not subject to proof of a contemporaneous parol agreement to the effect that it should mean other and different than the ordinary meaning of the language used therein by the parties. Nothing appears anywhere in the contract about any testing of the animal. The written conditions are that it was "to be delivered on or before January 1, 1920, in sound physical condition, and free from tuberculosis." Nothing whatever appears about any test, or that it should be accepted by the purchaser whether it did or did not react to a certain test. It was to be "free from tuberculosis." A contemporaneous parol agreement, or "understanding," that the provision "free from tuberculosis" should mean something other and different than the plain, unambiguous import of the language used, cannot be established by proof of such parol understanding without doing violence to the rule that prohibits such evidence. As bearing on the question herein discussed, see *Davis & Sons v. Robinson*, 71 Iowa 618; *Fawkner v. Smith Wall Paper Co.*, 88 Iowa 169; *Kelly v. Chicago, M. & St. P. R. Co.*, 93 Iowa 436; *Electric Storage Battery Co. v. Waterloo, C. F. & N. R. Co.*, 138 Iowa 369; *Blumer v. Schmidt*, 164 Iowa 682; *Farmers Elev. Co. v. Reddix*, 185 Iowa 425.

It is to be observed that there was no claim of fraud or misrepresentation or of any conditional delivery of the contract. It was solely an attempt to vary the terms of a written instrument by proof of a contemporaneous parol agreement.

The court erred in overruling the objection to this testimony and in giving the portion of Instruction 6 respecting said matter.

II.   The appellants urge that the verdict of the jury is contrary to the preponderance of the testimony, and is the result of passion and prejudice, and that the court erred in refusing to grant appellants a new trial for this reason.

We do not think the record warrants the conclusion that the verdict is the result of passion and prejudice on the part of the jury.   There was nothing about the character of the litiga-

2. NEW TRIAL: grounds: passion and prejudice.

tion or the situation of the parties that would have any tendency to particularly appeal to the passions of the jury or excite prejudice.   It was a simple contest between two stock breeders, over a fact question as to the condition of health of a bull.   The appellants offered evidence of the condition of the animal as disclosed by the post-mortem examination, and then offered the testimony of a number of expert witnesses who testified that, from the conditions so described, it was their opinion that the animal was afflicted with the disease of tuberculosis at and prior to the time of the shipment to appellants.   Against this testimony, the appellee produced the veterinarian who gave the animal one subcutaneous tubercular test shortly before the time of shipment, and who testified that the animal did not react to such test.

The burden rested upon the appellants at this point to establish the fact of a breach of the contract with respect to the animal's being free from tuberculosis.   It was essentially a fact question for the determination of the jury, under the conflict in the evidence.   We cannot sit as triers of facts in cases of this kind, nor substitute our judgment upon the evidence for that of the jury, in such a situation as is here disclosed.   The trial court was in a better situation to determine this question than we are.   We cannot reverse upon this ground, under the record in this case.

III.   Appellants contend that the court erred in denying their request for an instruction on the question of implied warranty.   No issue of implied warranty was tendered by the plead-

3. TRIAL: instructions: applicability. to pleadings.

ings.   The contract contained an express warranty on the very subject-matter of the implied warranty referred to in the requested instruction.

The court did not err in refusing to submit the question of implied warranty, under the record.

The judgment of the district court is—*Reversed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.