HOUSMAN, Respondent, v. GEIMAN et al, Appellants.

(213 N. W. 19.)

(File No. 5246. Opinion filed April 11, 1927.)

1. **Trial—Witnesses—Weight of Testimony and Credibility of Witnesses Held for Jury.**

   In action for damages for breach of warranty in sale of cattle alleged to have been tainted with tuberculosis at time of sale, weight of testimony and credibility of witnesses were for jury.

2. **Sales—Evidence—Evidence that Animals, Inspected 11 Months and 19 Days After Sale, Had Been Tubercular for "About" Year Did Not Prove them Tubercular at Sale.**

   In action for breach of warranty in sale of cattle as tainted with tuberculosis at time of sale, plaintiff did not meet burden of proving that animals were tubercular at or prior to sale by evidence showing that 3 animals, inspected 11 months and 19 days subsequent to sale, had been infected about a year; "about" meaning near, not far from, more or less.

3. **Evidence—Evidence, Not Showing Value of Animal at Sale, Was Insufficient to Authorize Verdict in Definite Amount for Breach of Warranty in Sale of Animals.**

   In action for breach of warranty in sale of cattle claimed to be tubercular at time of sale, evidence, failing to show value of animal at time of sale except sale price, was insufficient to justify verdict in any definite amount, under instruction that measure of damages was difference between actual worth of animals in condition they were in and worth in condition as warranted.

4. **Appeal and Error—Evidence—Testimony that Purchaser Other Than Plaintiff Found His Cattle Tubercular After Sale Was Inadmissible to Prove Plaintiff's Cattle Then Tubercular, and Its Admission Prejudicial.**

   In action for breach of warranty in sale of cattle found to be tubercular, testimony by another purchaser at same auction that 11 months after his purchase he found part of animals tubercular, which did not prove such cattle tubercular at time of sale, was inadmissible to prove that plaintiff's cattle were tubercular at time of sale, and admission of such testimony by purchaser who had suit pending against defendant was prejudicial.

5. **Evidence—Testimony by Purchaser Other Than Plaintiff that His Cattle Were Tubercular at Time of Sale Was Inadmissible to Prove Plaintiff's Cattle Then Tubercular.**

In action for breach of warranty in sale of cattle claimed to be tubercular at time of sale, testimony by another purchaser that cattle he purchased were tubercular at time of sale was inadmissible to prove that cattle plaintiff purchased were also tubercular at that time.

Note.—See, Headnote (1), American Key-Numbered Digest, Trial, Key-No. 139(1), 140(1), 38 Cyc. 1516, 1518, 1521; (2) Sales, Key-No. 441(3), 35 Cyc. 465, About, 1 C. J. Sec. 1; (3). Evidence, Key-No. 441(4), Sales, 35 Cyc. 465; (4) Appeal and error, Key-No. 1050(1), 4 C. J. Sec. 2953, Evidence, Key-No. 132, 22 C. J. Sec. 839; (5) Evidence, Key-No. 132, 22 C. J. Sec. 839.

Appeal from ·Circuit Court, Beadle County; HON. ALVA E. TAYLOR, Judge.

Action by Roy Housman against D. G. Geiman and another. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Reversed and remanded for new trial.

*Chamberlain & Hall,* and *Wilmarth, Haney, McCoy & McCoy,* all of Huron, for Appellants.

*Null & Royhl,* of Huron, for Respondent.

MISER, C.   Respondent recovered damages in the sum of $4,065 against appellant, in a suit brought for breach of warranty of 8 head of cattle purchased. In this opinion, respondent, Housman, is designated as H. and appellant Geiman as G.   At a public auction held by G. on November 21, 1919, H. bought 9 registered Shorthorn cows and heifers, whose names, registry numbers, and pedigrees were set forth in a printed catalogue used at said auction.   There is no question as to the animals so purchased being members of the royal family of Shorthorns.   The question at issue, assuming the warranty to be as contended by respondent, is whether they were tainted with tuberculosis at the time of sale; the complaint alleging that G. warranted them to be free from disease, and alleging that each and all of said cattle so warranted were not free from disease, but were tubercular.   For the sake of brevity, Nos. 1 to 9, inclusive, will be substituted for the respective names of said cattle as they appear in plaintiff's complaint.   For these cattle H. paid prices ranging from $350 to $675 per head, aggregating $4,715 for the 9 head.   No. 9, purchased for $550, was returned by H. to G., and the money refunded.

[1]    The evidence of the various experts who testified at the trial—the weight of the testimony and the credibility of the witnesses being for the jury, whose verdict for respondent indicates reliance upon the testimony of respondent's experts—tends to show that tuberculosis is a common disease among cattle; that one animal may get it from another; that there is a short period of incubation after the germ finds lodgment in the system, of possibly 8 days; that, after infection, a tuberculin test will immediately disclose the existence of the disease by a rise of the animal's normal temperature; that, if there be a rise of 2 or more degrees, the animal is considered tubercular and called a reactor; if slightly less than 2 degrees, suspicious; and, if a fraction of a degree, or none at all, healthy; that it is impossible to tell by the appearance of an animal whether it has tuberculosis or not, unless the disease is well developed; that it is impossible to state definitely from an inspection of its carcass just how long an animal has had the disease; and that, naturally, the conditions under which an animal is kept have considerable to do with the rapidity of the development of the disease.

Inasmuch as there is no direct and positive testimony to the effect that any of the cattle sold by G. to H. were tubercular at the time of sale, and no test of the cattle was made until long after the expiration of 60 days from the date of sale, the jury must have found its verdict upon the following facts: At a sale held by H. on April 9, 1920, some of the cattle purchased from G. the previous November were offered for sale, together with a large number of other registered cattle.  In order to get a permit to ship cattle sold thereat to be delivered outside the state, possibly 19 in number were tested for tuberculosis on April 10, 1920.  Nos. 1 and 2, and perhaps 1 or 2 more of the cattle purchased from G. the November preceding, reacted to the tuberculin test.  H. himself, who testified to this effect, was not present at the test. The veterinarian who made the test did not know the cattle which had been bought from G., but he made a record of the test, which he handed to H.  On the 17th or 18th of April, a week after the first test and after many of the cattle sold at H.'s sale had been taken away, a test was made of the 28 animals remaining in H.'s herd, exclusive of those tested on the 10th.  This test showed 10 reactors, 6 of which were not cattle purchased from G.  Of these

6, 2 were bulls owned by H. at the time he purchased G.'s cattle, and to which he had been breeding these cattle.   One of the reactors at this test was animal No. 8 of the cattle sold by G. to H. It is impossible to state from the record whether the remaining 3 reactors on this test of April 17th were or were not cattle purchased from G.   The testimony is uncertain as to whether, after the test on April 10th, H. segregated all of the cattle purchased from G., or merely those which that test proved tubercular; but, after the test on April 17th, he segregated all of the cattle purchased from G., some purchased from two other sources, and some which he had at the time he purchased the cattle from G. In the following November, approximately a year after G.'s sale, H. shipped 13 tubercular cattle to Sioux City for slaughter.   Of these 13, the evidence shows 4, being Nos. 1, 3, 7, and 8, to have been purchased from G. at the sale at which the alleged warranty was made.   The source of the other nine is not disclosed.   These 13 head were slaughtered on November 10, 1920, and inspected by veterinary inspectors for the United States Bureau of Animal Industry.   No. 7 was condemned as unfit for food purposes.   Nos. 1, 3, and 8 were ordered sterilized.   The other 9 were found to be tubercular, but not required to be sterilized.   The inspector, who inspected the carcasses, testified that it would be very reasonable to say, from the examination made of the carcasses of 1, 3, 7 and 8, that the animals had been infected for a considerable length of time, possibly a year; but that it would be absolutely impossible to tell from the appearance and the lesions of this disease on the carcass how long the animal had it.

"It might be a few weeks or months, or it might be a year or more; for, naturally, the conditions under which the animal is kept would have considerable to do with the rapidity of the development of the disease."

That, in his opinion, at least 1 of the 4 cows, being No. 7, had been infected possibly a year or more from the date of his examination, but it could not be so stated definitely.   The other inspector, who based his testimony upon the record made at the time by the first inspector, stated as his opinion that No. 7 had been infected at least two years, and that Nos. 1, 3, and 8 had been infected about a year.   Assuming, without deciding, that the testimony of an expert, who, so far as the record discloses, knew

nothing of the conditions under which they had been kept, that Nos. 1, 3, and 8 had been "infected about a year," would justify the jury in finding that these cattle slaughtered on November 10, 1920, were tubercular when sold on November 21, 1919, and assuming that the evidence would fully sustain a finding that No. 7 had been tubercular when sold, we have yet Nos. 2, 4, 5, 6, and 9 without any proof, competent or otherwise, that they were tubercular at the time of sale. No one knew it, and no expert gave it as his opinion, with or without foundation.

The depositions are not before us, nor does the record disclose when the evidence of respondent's experts was taken; but animals numbered 1, 3, 7, and 8 were slaughtered after the suit was begun. Two others were alive and in Huron at the time the case was tried there; so that there was no reason, practical or otherwise, why the jury might not have had, in the absence of anything better, the expert opinion as to whether, on November 21, 1919, Nos. 1 to 9, inclusive, were tubercular.

[2]   Respondent cites us to Junkin v. Hargrove & Arnold, 196 Iowa 1387, 195 N. W. 217. In that case, the animal was slaughtered; a post mortem examination was made; and expert witnesses testified that it was their opinion that the animal was afflicted with tuberculosis at and prior to the time of shipment. In the case at bar, there is no more than 1 animal out of the 9 warranted, the testimony as to which was as definite as to health conditions on date of warranty as in the case cited. Certainly, testimony that 3 of the animals had been infected "about a year" is not the equivalent of testimony that these animals were afflicted with tuberculosis at and prior to the time of sale, the sale being had 11 months and 19 days prior thereto. Webster defines "about" as meaning "near, not far from, determining approximately time, size, or quantity," and as being nearly equivalent to "more or less." According to Bouvier's Law Dictionary, the import of the qualifying word "about" is simply that the actual quantity is a near approximation to that mentioned. The respondent did not, by such evidence, meet the burden of proving them tubercular at and prior to the date of sale.

[3]   The court instructed the jury that the measure of damages was the difference between what the animals would have been worth at the time of the sale, if they had been as warranted,

and what they were actually worth in the condition they were in.
Under the rule, there was no evidence upon which a verdict would
be justified in the sum of $4,065, or, indeed, in any definite
amount, there being no evidence of the value of No. 7 at the time
of sale except the evidence that she sold for $650, and the testi-
mony of respondent that the 9 head would have been worth around
$9,000 if they had been in good condition at the time of sale. The
evidence being insufficient to justify the verdict, the judgment and
order appealed from must be reversed and the case remanded for
a new trial.   Inasmuch as the case will have to be retried, with
the possibility that, upon a retrial, different evidence, objections,
and instructions will be presented, we shall consider, in this opin-
ion, only one other of the 40 assignments of error.

[4]   At the sale at which H. bought 9 head of cattle from
G., one L. bought 9 head.   Over proper and timely objections by
appellant, L. was permitted to testify that 11 months after his
purchase of these cattle he had them tested; and, up to the time
of that test, he had never had any tuberculosis on his farm to his
knowledge, despite the fact that the witness admittedly could not
tell by looking at an animal whether it had the tuberculosis, and
this was the first test he ever had made on his farm.   He was
further permitted to testify, over proper objections, that, in the
following January, 14 months after this purchase, he had another
test made, after which he disposed of some more of the G. cattle
as tubercular cattle.   The veterinarian's record of the test made
of L.'s cattle, in October, 1920, which disclosed that out of 24 head
of cattle owned by L. there were 17 reactors, was admitted over
appellant's objection.

[5]   This testimony did not even prove that the cattle which
L. purchased were tubercular at the time of sale, much less prove
that those which H. purchased were tubercular at that time; and,
inasmuch as the witness L. and another witness who testified along
the same line had also suits pending against appellant, the effect
of their testimony was very prejudicial, in that it attempted to
supplement the lack of proof that the cattle which G. sold to H.
were tubercular at time of sale by voluminous testimony that other
purchasers attributed the prevalence of tuberculosis in their herds
to purchases made from G.; one witness being permitted to tes-

tify that he lost $10,000 by reason of buying one cow from appellant at that sale, although there was no evidence that it was tubercular at time of sale, and the record showed that he paid for it the sum of $675. Even though, by additional testimony, the witness L. had proved that his cattle were tubercular at the time he purchased them from G., that would not prove that the cattle sold to H. were also tubercular at that time.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

CAMPBELL, P. J., and GATES, POLLEY, SHERWOOD, and BURCH, JJ., concur.