HOUSMAN, Respondent, v. GEIMAN et al, Appellants.

(252 N. W. 857.)

(File No. 7010. Opinion filed February 23, 1934.)

*Chamberlain & Hall,* of Huron, for Appellants.

*Churchill & Benson* and *Max Royhl,* all of Huron, for Respondent.

RUDOLPH, J. This case is before this court a second time. See same title, 51 S. D. 214, 213 N. W. 19. The case has been retried, and additional evidence introduced. The verdict and judgment were again in favor of the plaintiff, and the defendant has appealed from the judgment and order denying the motion for new trial. It is not necessary to restate in detail the questions involved in this litigation. One of the reasons, set forth in the former opinion for a reversal of the case, is that there was no evidence introduced at the former trial to establish that five of the nine cattle, which were sold by the defendant to the plaintiff, were afflicted with tuberculosis at the time of the sale. When the case was retried, there was no attempt to predicate damages because of the cattle being afflicted with tuberculosis, except as to the four head of cattle referred to in the former opinion as Nos. 1, 3, 7, and 8, which cattle had been shipped to Sioux City, and the carcasses inspected. In this opinion we are going to refer to those four

cattle as Nos. 1, 2, 3, and 4, and No. 4, referred to in this opinion, corresponds with the No. 7 in the former opinion concerning which the one inspector testified that, in his opinion, the animal had been infected with tuberculosis at least two years. At this time there is no damage claimed on account of two of the cattle that were sold, and this leaves us concerned with only seven of the cattle as distinguished from the nine referred to in the former opinion. In addition to the claim that the cattle were infected with tuberculosis, there is now the further claim that the cattle were nonbreeders; that is, that they would not with ordinary care reproduce their kind. It is the contention of the appellant that these cattle were not only warranted to be free from disease but that they were also warranted to be what is known as "breeders." The trial court submitted the case to the jury upon the theory that the evidence was sufficient to sustain a finding by the jury that four of the seven cattle, involved herein, were afflicted with tuberculosis, and that six of the seven were nonbreeders. For convenience we refer to the cattle as Nos. 1 to 7, inclusive. As stated above, it is the contention of the respondent that Nos. 1, 2, 3, and 4 were afflicted with tuberculosis at the time they were sold. It is the further contention of the respondent that Nos. 2, 3, 4, 5, 6, and 7 were nonbreeders. It will be observed that as to Nos. 2, 3, and 4 both claims of the respondent apply, that is, the respondent claims as to these cattle that they were not only afflicted with tuberculosis, but they were also nonbreeders. The trial court in submitting the case to the jury instructed the jury, with reference to these three cattle, that, if they should find that they were either tubercular or nonbreeders, they could find for the plaintiff as to these three cattle, provided they found that they were warranted as claimed by the plaintiff. Under this instruction six of the jury could believe that these three cows were nonbreeders and not afflicted with tuberculosis, while the other six could believe that they were afflicted with tuberculosis, but were not nonbreeders, and still find for the plaintiff in so far as these three animals are concerned.

As stated in the former opinion, there is no direct and positive testimony to the effect that any of these cattle were afflicted with tuberculosis. The sale at which the plaintiff purchased these cattle from the defendants was held on November 21, 1919. It is undisputed that in 1917 the defendants discovered tuberculosis in

their herd. It is the contention of the defendants that, thereafter, they completely cleaned up their premises where their cattle were kept, disposed of the tubercular animals, and had the herd tested in 1918 and again in 1919, by which two tests it was demonstrated the herd was free from disease. The plaintiff strenuously argues that what was done by the defendants after discovering the tuberculosis was superficial only, and not sufficient to rid the premises of tubercular infection. The plaintiff further contends that the evidence, relative to the tests made of defendants' herd in 1918 and in 1919, is so inadequate that the jury would be justified in finding that no such tests were made. We have given what we believe careful consideration to this evidence, and it is our conclusion that the evidence of the disease existing in the Geiman herd in 1917 standing alone, and without the evidence of the post mortem examinations referred to in the former opinion, would not sustain a finding by the jury that these cattle were tubercular at the time of the sale.

We are principally concerned, therefore, with testimony of the witnesses concerning the post mortem examinations. As stated in the former opinion, approximately a year after the Geiman's sale, Housman shipped thirteen tubercular cattle to Sioux City for slaughter. Of these thirteen, four were the Geiman cattle and referred to herein as Nos. 1, 2, 3, and 4. Arriving at Sioux City these animals were slaughtered, and examined by a Dr. Leary of the United States Bureau of Animal Husbandry. Dr. Leary examined the carcasses for evidence of tuberculosis, and examined certain lesions which he discovered. In answer to the question as to how long in his opinion the animals had been infected with tuberculosis, he answered, "Possibly a year." On cross-examination Dr. Leary stated: "The length of time that an animal has had this disease cannot be definitely ascertained from the condition of the body after it is killed. So whether it has been one year or more, or a few months cannot be definitely determined. Naturally, the condition under which the animal was kept would have considerable to do with the rapidity of the development of the disease." Dr. Shipley, who was the inspector in charge of the bureau at Sioux City, and who based his testimony upon the purported records made at the time the animals were slaughtered, testified that in his opinion the animal described herein as No. 4 had

been infected at least two years, and Nos. 1, 2, and 3 had been infected a year or more at the time they were slaughtered, which was a few days less than a year from the time they were purchased by Housman at the Geiman's sale. Dr. Shipley also testified on cross-examination that there was no positive method of determining the length of time an animal had been infected with tuberculosis; that, "because of different powers of resistance in different animals, it is more difficult to tell how long one animal has been infected with this disease, than another in perhaps the same lot." However, he further testified: "We have kind of an average struck on the different powers of resistance and one thing and another that makes it practical to determine within reasonable limits." Dr. Leary also testified that he could form an opinion, as to the length of time the cattle had been infected, based upon the lesions shown, which opinion was based upon his knowledge and experience.

It is contended by appellant that the above record of the testimony of the two doctors shows their estimate, as to the length of time the cattle were afflicted with this disease, to be nothing more than a conjecture or a guess, and therefore inadmissible. We are not inclined to so hold. That the length of time these cattle had this disease was properly the subject of expert testimony, there can be no doubt. Absolute certainty is not required of an expert; the only requirement is that the testimony amounts to something more than a conjecture or a guess. Both doctors were of long experience in slaughtering tubercular cattle and observing the condition of the carcasses. The fact that both stated that there could be no absolute certainty about their testimony would not render it inadmissible. Subject to our following holding as to Exhibit X, it was proper to submit this testimony to the jury, and the weight to be given this testimony was for the jury. While it is true that both doctors testified that the extent of the lesions would be dependent somewhat upon the care of the cattle, and it was not shown that they were acquainted with the kind of care given the cattle, yet the estimate as to the time given by these doctors was the minimum time which in heir opinion the cattle were infected, assuming that the cattle were kept under average conditions, and the evidence fairly establishes without contradiction that the cattle were kept under conditions better than the average.

██ ██ Exhibit X was offered by the plaintiff and received in evidence. Exhibit X purports to be a record of the office of Animal Husbandry in Sioux City, signed by Dr. Leary, and a report of the final post mortem inspection made by Dr. Leary on the cattle shipped by Housman. This exhibit is a form ruled off into small squares. The first column on the left-hand side of the exhibit shows the tag number of the animal killed. To the right of this column follows twenty eight small columns headed with medical terms which indicate the nature of the lesions in different organs of the body. If these lesions are slight, a line is drawn in the square slanting in one directon; if well marked, a line slanting in the other direction is drawn in the square; and if extensive, a cross is drawn in the square. The second deposition of Dr. Shipley was based entirely upon Exhibit X, and in this deposition he gave his opinion, as above set out, as to the length of time these cattle had been infected with this disease. Exhibit X also formed the basis of the testimony of a Dr. H. A. Hartwich, who was a veterinarian living and practicing his profession in Huron, and he testified that, in his opinion, animal No. 4 had been infected with tuberculosis "over a year, possibly two years," and animals Nos. 1, 2, and 3 about a year. In identifying Exhibit X, Dr. Shipley, who was no longer in the Sioux City office at the time his testimony was taken, testified as follows, in answer to the question as to whether or not the signature appearing on Exhibit X was that of Dr. Leary:

"A. It looks like it. Now, this says 'copy' here, and it may be possible that this is not his exact signature, although it looks like it. See, this is a copy.

"Q. The practice was that of taking a carbon copy of the report and putting that in the file? A. This is a report made from the original. You see here it is not the original, but a copy made from the original. Now, it is possible that it is not J. W. Leary's signature, although it look like it."

On cross-examination he testified:

"Q. Did you ever see this paper, Exhibit X, before this time? A. I think that I have checked it; my stamp is upon it. That is the Clerk's initials up here.

"Q. Just answer. A. Yes. I saw it yesterday. I presume

I saw that same paper when the deposition was taken in Sioux City. I don't know the date.

"Q. But you are not certain? A. Well, officially I say yes, because that looks like it.

"Q. When and where? A. In my office in Sioux City before it was given out.

"Q. Were those the only times that you saw it? A. So far as I know."

The exhibit on its face is marked, "Copy—M. M. W." There is no showing from whence the exhibit came, nor does any one who was connected with the Sioux City office at the time the evidence was taken testify that this was part of the records and files of that office. The exhibit on its face and the testimony of Dr. Shipley indicate quite clearly, we believe, that the exhibit is nothing more than the copy of some record of the Sioux City office, and there is no showing made as to why the original was not produced, and no attempt made to show that this copy is a correct reproduction of the original. We are convinced that there was no adequate foundation laid for the introduction in evidence of this exhibit. The respondent quotes section 2727, Rev. Code 1919, which provides: "An entry made by an officer or board of officers, or under the direction and in the presence of either, in the course of official duty, is prima facie evidence of the facts stated in such entry." And cites and relies upon the case of State v. Hall, 16 S. D. 6, 91 N. W. 325, 65 L. R. A. 151, and State v. Ewert, 52 S. D. 619, 219 N. W. 817, as supporting his contention that this exhibit was properly received. The statute and the cases cited would, perhaps, be applicable if the record in this case established that Exhibit X was an official record of the Sioux City office. However, the record does not establish that Exhibit X is an original record of the Sioux City office, but establishes as Dr. Shipley testified: "This is a report made from the original. * * * It is not the original but a copy made from the original." There was no attempt to lay any foundation for the introduction of Exhibit X as secondary evidence, and we are satisfied that the exhibit was not entitled to be received in evidence.

██ It is true that Dr. Shipley testified in his first deposition substantially to the same effect as he testified in his second deposition when his testimony was based upon Exhibit X, but we can-

not say that this fact rendered the receipt in evidence of Exhibit X not prejudicial. Dr. Shipley was the most positive of any of the witnesses as to the length of time that tuberculosis had been existent in the Geiman cattle, and his second deposition, wherein he based his testimony upon Exhibit X, materially, in our opinion, strengthened the opinion which he had given in his first depostion without the complete information contained in Exhibit X. The testimony of Dr. Hartwich was based at least in part on Exhibit X, and to a certain extent supported and confirmed the testimony of Dr. Shipley. Dr. Hartwich did not testify at the former trial. In addition to what has just been said, the exhibit, itself, was before the jury, and we would not be able to say that the jury was not influenced at least to some extent by this exhibit. The sufficiency of the evidence depended to a large extent upon the testimony relative to the post mortem examination. We think the admission of Exhibit X and the testimony based thereon was such error that it makes necessary a new trial.

The judgment and order appealed from are reversed.

ROBERTS, P. J., and POLLEY and CAMPBELL, JJ., concur.

WARREN, J. (dissenting). I cannot agree with the majority opinion for the reason that the issues involved in the trial were presented to the jury upon evidence which, in my opinion, was ample to sustain its verdict. I am mindful of the objections urged against Exhibit X, but am unable to agree that its admission was prejudicial. I do not believe that the verdict should be disturbed.