Eggers *et al. v.* Eggers *et al.*

## EGGERS ET AL. *v.* EGGERS ET AL.

WILL.—*Insanity of Testator.*—A person who has become the victim of mental derangement, amounting to insanity in any form, is, under the statute of this State, incompetent to make a will.

SAME.—*Instruction to Jury.—Partial Insanity.*—On the trial of an action to revoke the probate of the will of a testator on the alleged ground of his insanity, an instruction to the jury, that, though the testator might have been, to some extent, insane, yet such insanity would not avoid the will, unless it could be shown to have entered into or affected the will itself, is erroneous.

SAME.—*Witness.—Expert.*—It is error in the court in such action, in instructing the jury as to the opinions of witnesses regarding the sanity of the testator, and as to the opinions of experts upon hypothetical questions, to direct them as to the weight to be given to such evidence.

SAME.—An instruction to the jury in such case, that "the testimony of experts is usually of very little value in determining the sanity or insanity of a party," is erroneous.

SAME.—*Credibility.*—The credibility of experts testifying as witnesses is tested by the same rules as are applied to any other class of witnesses.

From the Boone Circuit Court.

*W. B. Walls,* for appellants.

*J. W. Clements,* for appellees.

NIBLACK, J.—This was a proceeding, in the court below, to set aside an instrument in writing, with the probate thereof, purporting to be the last will and testament of Hugh Eggers, deceased, late of Boone county.

The plaintiffs Landrine Eggers and Sarah Eliza Brindle were the only children of the deceased, and the other plaintiff, John P. Brindle, was the husband of the said Sarah Eliza. The defendant Sarah Eggers was the decedent's widow, and the other defendants, John Eggers, Lou Brindle and Charles Brindle, were his grandchildren, and all were beneficiaries under the alleged will.

The complaint, as amended before the trial, consisted of two paragraphs.

The first charged, that the instrument in question was

procured to be executed by the fraud and undue influence of the. said Sarah Eggers and others.

The second charged, that, at the time of its execution, the deceased was of unsound mind, and incapable of making a valid will.

The defendants answered in general denial.

There was a trial by a jury, and a verdict and judgment for the defendants.

On the trial, the court instructed the jury, among other things, that

"The symptoms of insanity are quite incapable of description or classification. Insanity is sometimes quite obvious. At other times, it appears in so subtle a form as to elude the observation of the most experienced physicians. The belief in the existence of mere illusions or hallucinations, the creatures purely of the imagination, such as no sane man could believe in, are unequivocal evidences of insanity; but even this would not be sufficient to avoid a will, unless such delusion or insanity had entered into, or affected, the will itself; and where the party has correct perceptions, he will generally be found competent to make an understanding disposition of property and a valid will, unless, from imbecility, he is incapable of estimating the just relations of things, or of fully recollecting the elements of a will."

By this instruction, the court evidently intended to be understood to mean, that, although a person might be, to some extent, insane when he executed a will, yet such insanity would not avoid the will, unless it could be shown to have entered into, or affected, the will itself. Independently of any statutory provision on the subject, that might be considered as the law, as applied to what is termed partial insanity, see 1 Jarman Wills, 4th Am. ed., p. 60. Our statute, however, does not permit a person " of unsound mind " to make a will. 2 R. S. 1876, p. 570, sec. 1.

"The phrase 'of unsound mind,' includes idiots, non

compotes, lunatics, and distracted persons." 2 R. S. 1876, p. 313, sec. 797. Also, monomaniacs. 2 R. S. 1876, p. 598, sec. 1.

In the case of *Willett* v. *Porter*, 42 Ind. 250, it was, in effect, decided, that the words "of unsound mind" include every species of unsoundness of mind.

Adhering to that construction, as we feel justified in doing, partial insanity is necessarily included as one of the forms of mental unsoundness. It is often difficult to decide when eccentricity, or a merely capricious imagination, terminates, and when actual mental derangement begins; but when a person has become the victim of a mental derangement, amounting to insanity in any form, we are of the opinion, that, under our statute, he is incompetent to make a will.

We think the instruction was, therefore, erroneous.

The court also instructed the jury, that

"Some witnesses have given their opinions of the condition of the mind of the testator about the time of the execution of the will, basing such opinions upon facts stated by themselves to you. These opinions are a very weak class of testimony, and depend upon the facts stated for weight. If the facts properly support the opinions, those opinions are of some value, but, if they are not supported by the facts, they are of no value whatever. Some persons have been introduced as experts on the question of unsoundness. These witnesses gave opinions based upon hypothetical cases. These opinions are of no value, unless the hypothetical cases put to the experts are fully sustained by the evidence given in the cause. If the hypothetical cases are fully proved by the evidence, and the experts understand the subject upon which their opinions are given, those opinions ought to have some weight, but the testimony of experts is usually of very little value in determining the sanity or insanity of a party. The opinions of experts are not so highly regarded now as formerly; for, while they sometimes afford

aid in the determination of facts, it often happens that experts can be found to testify to any theory, however absurd; and they frequently come with biased minds, prepared to support the cause in which they are embarked. I do not wish to be understood, that the witnesses called in this case are biased. You are the judges of that matter."

We are of the opinion, that this instruction was also erroneous. It underrated too much the value of the testimony of experts as a class. The value of such testimony depends as much upon all the facts and circumstances connected with each particular case as that of any other class of witnesses. It is for the court first to decide whether a witness is competent to testify as an expert; but, when permitted to testify, an expert stands substantially on the same footing as any other witness as to credibility. His testimony may be valuable, or it may not be, depending upon the manner in which it may be able to withstand the usual tests of credibility which may be applied to it. *Davis* v. *The State*, 35 Ind. 496.

It is true, as a general rule, that, where the opinion of an expert is founded upon a hypothetical case, his opinion can not be considered of material value, unless the hypothetical case put to him is fully sustained by the evidence. Yet exceptions to this rule may arise, where the hypothetical case is susceptible of division, and a part of it only is sustained by the evidence.

Again, we think the court was mistaken in saying, that " the testimony of experts is usually of very little value in determining the sanity or insanity of a party."

The contrary rather seems to us to be the rule. Touching such an issue, the testimony of experts is usually regarded as an important element in the cause. Our statute for the admission of patients into the Hospital for the Insane fully recognizes the value of medical witnesses when inquiring into cases of alleged insanity.

We do not know on what authority the court said to

the jury, that "the opinions of experts are not so highly regarded now as formerly," and we are inclined to think, that such is not the recognized doctrine of the authorities.

A modern author says :

"The whole system of experts, as now used, is comparatively a modern experiment. It has grown out of the wonderful growth and increase of science in modern days, and the development, by that means, of what was before too recondite to be any thing more than conjectural in the minds even of the wisest." Washburn Experts, 1 Am. Law Rev., p. 62.

Experts may not well understand the subject about which they testify; they may be biased in favor of the party who calls them; they may base their conclusions on false theories or on mistaken premises, or the facts may be against them. These objections, when well taken, go only to their credibility, and we know of no rule which applies them with greater force to experts than to other witnesses.

Both the instructions above quoted being material to the interests involved on the trial, we must presume they affected the minds of the jury injuriously to the appellants.

Other questions of minor importance are presented by the record, but, as they may not again arise in the cause, we will not now consider them.

The judgment is reversed, at the costs of the appellees, and the cause is remanded for a new trial.