(No. 11278.—Reversed and remanded.)

THE SAVOY HOTEL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed June 21, 1917.*

1. WORKMEN'S COMPENSATION—*questions of law are subject to determination for first time in circuit court.* As the committee of arbitration and the Industrial Board are administrative bodies and have no judicial functions, it is only on the review in the circuit court that questions of law may be determined for the first time, and any question of law is subject to determination that is presented by the record of the Industrial Board, whether or not there is a positive record or recital that the question was presented to the arbitrators or the Industrial Board.

2. SAME—*when constitutional question is presented by record of Industrial Board.* Whether or not the Workmen's Compensation act, or any section of the same which it is claimed brings the case within its terms, is constitutional is a question of law presented by any record of the Industrial Board containing a decision awarding compensation.

3. SAME—*ordinary rules of practice will be followed unless in conflict with provisions of the statute.* While a proceeding under the Workmen's Compensation act is wholly statutory and is covered by the provisions of the act, the ordinary rules of practice and procedure will be followed upon a review of the judgment of the circuit court where they do not conflict with the express provisions of the act.

4. SAME—*constitutional question cannot be raised in Supreme Court if not presented to circuit court.* The rule that a constitutional question cannot be presented in the Supreme Court for review unless it was presented to the lower court for determination is applicable to a proceeding under the Workmen's Compensation act, and the record of the circuit court must disclose in some manner that such a question was presented to it for its determination before it can be raised in the Supreme Court.

5. SAME—*burden rests on administrator to show death was result of accidental injury arising out of and in course of employment.* Under the Workmen's Compensation act the burden rests upon the administrator to show that the death of his intestate was caused by accidental injury arising out of and in the course of the employment, and this proof must be by direct and positive evidence or by evidence from which such inference can be fairly drawn without being based on mere conjecture or surmise.

6. SAME—*when fact that employee had on his uniform when killed is not proof that injury was received in course of employment.* The fact that a hotel porter, who was off duty for the day unless ordered to perform some service because still on the hotel premises, had on his uniform when he was found dead in a freight elevator in the hotel, is not, of itself, sufficient to sustain a finding that he received his injury while in the course of his employment.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

J. C. M. CLOW, H. M. STEELY, and H. M. STEELY, JR., for plaintiff in error.

F. L. DRAPER, and C. R. SHANNON, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

The Industrial Board of Illinois awarded C. R. Shannon, administrator of the estate of Eugene Warlich, deceased, the sum of $4.04 per week for 415 weeks and $3.40 per week for one week, beginning January 24, 1916, against the Savoy Hotel Company, plaintiff in error, for the death of his intestate, in a proceeding under the Workmen's Compensation act. The record of the board was filed in the circuit court of Vermilion county as a return to a writ of *certiorari,* where the decision and award of the board were confirmed. The circuit court has certified that this is a proper case to be reviewed by this court.

Eugene Warlich was a negro porter employed by the plaintiff in error in the Savoy Hotel, in Danville. Two

porters were employed in the operation of the hotel. On Saturday, January 22, 1916, two men came to the hotel and occupied room No. 306, on the third floor. On the evening of that day these men purchased a dozen bottles of beer and a quart of whisky and had the same sent to their room for their use on the following day. They spent Saturday night in a carousal, coming to their room in the hotel about six o'clock on Sunday morning. They spent Sunday in their room, alternately sleeping and drinking, and were apparently in such a state of intoxication that neither of them could remember definitely what occurred on that day. Warlich was called in the morning to put their liquor on ice to have it cool for them when they wanted it, and he and the colored elevator boy answered various calls to this room during the day. They were given whisky by these men and each of the boys became more or less intoxicated. Plaintiff in error had a rule that one of the porters could get off duty each Sunday afternoon as soon as the work of mopping the rotunda and cleaning the wash-room was done, and under this arrangement the porters took turns in taking this half holiday, and on Sunday, January 23, it was Warlich's turn to get off duty. After this work was completed it was the privilege of the porter whose turn it was to be relieved from duty to leave the hotel or remain there, as he chose. If he remained at the hotel he was expected to answer any call which the clerk of the hotel might direct him to answer or to do any other work to be done when directed to do so. If he chose not to do this work it was his privilege to refuse and to leave the hotel. The two porters began mopping the rotunda at one o'clock Sunday afternoon. Prior to that time the other porter and the elevator boy had noticed Warlich's intoxicated condition, and some remarks having been made about it, he stated that he had had enough for that time and was not going to drink any more until he was off duty; that he then intended to go up-stairs and "hit it up again;"

that he would be off duty then and it was nobody's business if he went home drunk. The mopping was finished about half-past one o'clock. Warlich then went to the wash-room, where the work necessary to be done would occupy him but a short time. Shortly after two o'clock,—about 2:15 o'clock, as near as the time can be fixed,—the elevator boy saw him come out of the wash-room, and that was the last time any of the witnesses saw him alive.

The Savoy Hotel is a four-story building, facing south on Main street, with an alley running north and south along the west side of the building. On the first floor, along the alley, is a baggage room, with a door leading into the alley, through which baggage is unloaded into and loaded from the baggage room. In the baggage room is a freight elevator, used only for carrying baggage and other freight to the various floors of the hotel. On each of the floors above the first floor the door opening into the freight elevator shaft is on the same side of the shaft as the opening into the elevator in the baggage room, and these doors were substantially the same on each floor. They consisted of two wooden doors swinging on hinges,—one door, when closed, being fastened by a spring-bolt going into the floor and the other door latching into it. At each of these doors there extended across the shaft, about three and one-half feet above the floor, a bar two inches thick and six or eight inches wide, which was removed when the doors were to be opened and replaced after they were closed. · After Warlich was last seen on that afternoon the freight elevator was used but once. At three o'clock the porter who remained on duty was directed by the clerk of the hotel to take some baggage to the third and fourth floors. He went to the baggage room and found that the freight elevator was standing empty at the third floor. He brought the elevator down to the baggage room floor by pulling the cable, and took the baggage, as he was directed, to the third and fourth floors. When he returned he closed and

fastened the doors and put up the bars on both the third and fourth floors. About five o'clock Warlich was found dead in the freight elevator. He was in a sitting position in one corner of the elevator, with his legs lying across a small two-handled truck which was used for handling baggage. An examination disclosed that his neck was broken and he had suffered a cut on the jaw and an abrasion on the right leg below the knee. There was a small pool of blood beside him, and there were some blood-stains on his clothing from the abrasion below his knee. He had apparently been dead from two to four hours. While on duty the porters at the hotel wore blue blouses or jumpers with the initials "S. H." on them. When Warlich was found dead he still had this blouse on.

There is no direct evidence as to how Warlich came to his death. The men who occupied room 306 testified that they had telephoned about half-past two o'clock in the afternoon for a boy to come and remove the empty bottles from their room, and one of them thought Warlich was the porter who responded to the call and removed the bottles. The clerk testified that there had been no such call made, and it was conclusively shown that the bottles had not been removed from the room that day but were removed by other employees Monday morning. The freight elevator was six feet in length north and south and five feet in width. Two large iron bars extended across the top of the elevator from the north to the south. Fastened to the center of these bars is the hoisting cable, and from the outer edge of one beam to the outer edge of the other is about two feet, thus leaving a space of less than two feet between the outer edge of each beam and the side of the elevator. These beams were covered with grease and dust. A careful examination after the finding of Warlich's body disclosed that there were no marks of any kind upon these beams or upon the sides of the elevator shaft. It is the theory of defendants in error that Warlich, after finishing his work in the wash-

room and while still on duty, went to room 306, using the freight elevator, which he left standing at the third floor; that after he had spent some time in this room he attempted to return to the first floor in the freight elevator; that he either stepped into the shaft thinking the elevator was still there and fell, or having discovered that the elevator was not there fell into the shaft while reaching for the cable to bring the elevator back up to the third floor.

Certain ordinances of the city of Danville were introduced in evidence regulating the construction and management of passenger elevators and the construction of freight elevators and elevator shafts in all buildings of a certain height. It is by virtue of these regulatory ordinances and the statutes in relation to fire-escapes that it is claimed the plaintiff in error comes within the provisions of the Workmen's Compensation act. Plaintiff in error contends that it is not within the act, and that the provisions of the act whereby it is claimed it is brought within it constitute local and special laws and are therefore unconstitutional. It is objected that this question was not raised in the circuit court and cannot, therefore, be raised for the first time in this court. Under the provisions of the Workmen's Compensation act the hearing is had and the evidence taken before an arbitrator or committee of arbitration appointed as provided by that act. The finding of the arbitrator or committee of arbitration can be reviewed by the Industrial Board. The arbitrator, committee of arbitration and Industrial Board are administrative bodies and have no judicial functions. The act provides that the circuit court of the county where any of the party defendants may be found shall by writ of *certiorari* to the Industrial Board have power to review all questions of law presented by the record of the Industrial Board. It is upon this review that questions of law may be presented and determined for the first time, and any question of law is subject to determination that is presented by the record of the Industrial Board.

It is not necessary, in order to secure such determination in the circuit court, that there be a positive record or recital that such questions were presented to the arbitrators or the Industrial Board for their determination. If the record itself presents any question of law the parties are entitled to have it determined by the circuit court. Whether or not the Workmen's Compensation act, or any section of the same which it is claimed brings the case within its terms, is constitutional is a question of law presented by any record of the Industrial Board containing a decision awarding compensation. While this is wholly a statutory proceeding and is covered by the provisions of the act, the ordinary rules of practice and procedure will be followed upon a review of the judgment of the circuit court where they do not conflict with the express provisions of the act. It is a well settled rule that a constitutional question can not be presented in this court for review unless it was presented to the lower court for its determination. This rule applies in cases of this kind. The record of the circuit court must disclose in some manner that such a question was presented to it for its determination before it can be raised in this court. There is nothing in this case to indicate in any way that this question was presented to the circuit court for determination and it cannot be raised here for the first time.

Plaintiff in error contends that the evidence fails to show that the death of Warlich arose out of and in the course of his employment. The burden rested upon the administrator to show that the death of Warlich was caused by accidental injury arising out of and in the course of his employment. (*Armour & Co.* v. *Industrial Board,* 273 Ill. 590; *Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 id. 454; *Ohio Building Vault Co.* v. *Industrial Board,* 277 id. 96.) Not only does the burden rest upon the claimant to show that the injury arose out of and in the course of his employment, but he must

show this by direct and positive evidence or by evidence from which such inference can be fairly drawn. The proof must be based upon something more than a mere guess, conjecture or surmise. (*Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board, supra; Ohio Building Vault Co.* v. *Industrial Board, supra.*) In this case there is no direct proof as to how Warlich came to his death. He had apparently finished his work for the day. He had been directed to do nothing further after he had finished cleaning the wash-room, and his fellow-employees and the clerk supposed that he had gone home, as was his custom. The finding that he was killed while in the course of his employment can be supported only by the merest guess and conjecture. From the evidence produced it can be inferred with equal certainty that he met his death in some other manner. The fact that all the doors leading into the elevator shaft above the first floor were fastened and barred and that there were no marks either on the elevator shaft or on the beams across the top of the elevator, indicates strongly that he did not fall down the shaft into the elevator. It appears from the record that it was believed by the police officers that he had been murdered and his body placed in the elevator. An arrest was made and an investigation prosecuted to determine whether a crime had been committed. The mere fact that he had his porter's uniform on when he met his death is not sufficient to sustain a finding that he received his injuries while in the course of his employment. There is no proof in this record which fairly tends to show that the death of Warlich resulted from accidental injury received, arising out of and in the course of his employment.

The judgment of the circuit court is reversed and the cause is remanded.                    *Reversed and remanded.*