BRADBURY v. HYMERA COAL AND MINING COMPANY.

[No. 14,250. Filed July 1, 1931.]

*Jesse E. Bedwell* and *Charles H. Bedwell,* for appellant.
*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, W. Paul Stratton* and *John S. Taylor,* for appellee.

LOCKYEAR, J.—This is an appeal from an order entered by the Industrial Board. The issues were made by the filing by appellant of an application for adjustment of compensation. At the trial of the cause, it was stipulated that the only issue for determination, and about which there was any dispute, was whether the appellant had sustained a permanent partial impairment as a result of the alleged injury, and, if so, the extent thereof.

The full Industrial Board found that, as a result of the injury received on May 13, 1929, appellant now has a tumerous growth on his left breast, and that appellee offers to appellant such surgical and medical attention as is needed for the removal of said tumorous growth, and further agrees to pay to appellant compensation during total disability incident to the said operation at the rate of $16.50 per week; that appellant did not accept, neither did he reject, said surgical and medical attention so proffered by the appellee. The full Industrial Board further found from the evidence of medical

witnesses introduced on behalf of appellant and appellee that the surgical operation would be advisable and that all medical evidence shows that appellant might be relieved of this tumorous growth by such operation, and that there is no evidence tending to show that appellant's condition was permanent, but, if this tumorous growth was not removed, it would naturally grow progressively worse, and the full Industrial Board now finds from the evidence said surgical attention as proffered to appellant by appellee should be accepted by him.

The order of the court was that appellant should accept such medical and surgical treatment as proffered by appellee for the removal of said tumorous growth, and, if appellant should accept same, appellee shall pay to appellant compensation at the rate of $16.50 per week from the date he enters the hospital and to continue during the period of his disability incident to said surgical operation. It is further ordered that appellee shall pay all the reasonable and necessary medical, surgical, hospital and nurse services and supplies incident to said operation. It is further ordered that appellee shall not be further liable for further compensation payments to appellant unless and until the appellant subjects himself to said surgical and medical treatment as proffered by appellee.

Appellant excepted to the award of the full Industrial Board and brought this appeal to this court, alleging that the order is contrary to law.

This order of the Industrial Board is pursuant to §25 of the Workmen's Compensation Law (§9470 Burns 1926), which is as follows: "If, by reason of the nature of the injury or the process of recovery, treatment is necessary for a longer period than 30 days, the Industrial Board may require the employer to furnish such treatment for an additional period, not exceeding 30 days. The refusal of the employee to accept such services and supplies,

when so provided by the employer, shall bar the employee from all compensation during the period of such refusal."

The case of the *Enterprise Fence, etc., Co.* v. *Majors* (1918), 68 Ind. App. 575, 121 N. E. 6, is in point. We quote therefrom as follows: "There was evidence in this case and the Industrial Board found: 'That, at the time of the injury, the attending surgeon employed by appellant at first advised the amputation of appellee's index finger; that appellee remonstrated and insisted that the finger should be saved if possible, and, in response to the objection of appellee, the attending physician advised that he had saved fingers as badly injured as that of appellee, and it was agreed to make an effort to save the finger. The finger was not amputated at that time, but was treated for some period in an endeavor to save it; that infection developed which involved practically the whole of plaintiff's right hand, and made necessary the amputation of the index finger, which was amputated at the middle joint. . . . That the infection developed because of the delay in the amputation; that the plaintiff's refusal to accept the amputation at the time of the injury was made in good faith with a view of saving the finger if possible; that his refusal was not wilful, stubborn or without reason.' It would therefore seem to follow that appellee's insistence that his finger be saved if possible, when taken with the statement made by the surgeon, was not such unreasonable or wilful conduct as would prejudice the allowance of additional compensation."

The case of *Jendrus* v. *Detroit Steel Products Co.* (1913), 178 Mich. 265, 144 N. W. 563, L. R. A. 1916A 381, Ann. Cas. 1915D 476, is cited in support of *Enterprise Fence and Foundry Co.* v. *Majors, supra.* Both cases are upon facts upholding the right of the employee to refuse to be operated upon.

In the Jendrus case, it was argued by appellants that: "It would be a harsh rule that bound an employee who had been injured to accept in all cases the dictum of a surgeon who advised an operation. Manifestly the employee cannot be called upon at all times and under all circumstances to place himself absolutely in the hands of the employer's surgeon; but, where there is no dispute amongst the medical advisers, and the course suggested presents the only opportunity for the saving of the life, we insist that the refusal is a new and controlling cause for the injury for which recovery is sought."

The court said: "In none of the cases cited by appellants' counsel was the operation anything more than a minor operation for a trifling injury. . . . None of the testimony in the case goes to the length of showing that Jendrus's life would have been saved had the operation been submitted to at 8 o'clock in the evening . . . which was the first time that doctor Hutchings had reached the conclusion that an operation was necessary. . . . There is testimony that he might have recovered without any operation, although that result could not have been reasonably expected. . . . Neither can we hold that Jendrus by his conduct in the premises in causing a delay in the operation was guilty of intentional and wilful misconduct."

The decided cases hold that there is no hard and fast rule that can be laid down, and that all cases must be decided upon the facts arising in each case.

We are called upon to decide whether the Industrial Board is authorized under the statute to make the order in question. The only question that was presented to the Industrial Board was whether the appellant has sustained a permanent partial impairment as a result of the injuries that he has received. The Industrial Board did not decide that question, but proceeded to make an order to the effect that the appellant shall not be entitled to

further compensation payments unless and until he subjects himself to a surgical and medical treatment as proffered by the appellee.

The law on the subject is that the Industrial Board may require the employer to furnish the treatment for an additional period of 30 days, and, until the employee refuses to accept the treatment offered, we are of the opinion that the Industrial Board has no power to make any order in the premises concerning his refusal. When the offer is made, the employee can either accept or refuse. If he is of the opinion that he is justified in refusing the proffered treatment, he can do so, and, after that time, it is his privilege to show that such refusal was justified. There being no authority in the law authorizing the Industrial Board to make such an order in advance of the employee's refusal to accept the treatment of the appellee's surgeon, the order of the said board is contrary to law.

This case is remanded to the Industrial Board for further proceedings on the petition now pending before said board.