## WITTE v. J. WINKLER & SONS, INC.

[No. 15,154. Filed April 19, 1934.]

*Walker & Walker* and *Emanuel H. Baugh,* for appellant.

*William E. Hart, Herman L. McCray, Edward J. Boleman, Burrell Wright,* and *Jacob S. White,* for appellee.

SMITH, J.—This is an appeal from an award by the Industrial Board against appellant suspending compensation on account of a change of conditions in that appellant, without just cause, refused the services of a physician proffered by the appellee.

Appellant assigns as error that the award of the Industrial Board is contrary to law, which presents all questions raised by him.

On September 2, 1932, appellant sustained an injury arising out of and in the course of his employment by appellee, in that he received inguinal herniae on both the left and right sides.

Such proceedings were had that on April 3, 1933, the full Industrial Board of Indiana made an award for compensation of $3.85 per week for partial disabil-

ity beginning on the 9th day of September, 1932, and to continue as long as appellant is partially disabled as the result of said injuries.

On the 21st of June, 1933, appellee filed an application for a review of the order of April 3, 1933, on account of a change in conditions upon the following grounds: "That the employee, without just cause therefor, has refused the services of a physician provided by the employer."

To this application the appellant filed an affirmative answer, which in effect is no more than a general denial, setting up that he was justified in refusing the services of such physician because the services proffered consisted of an operation for hernia which would endanger appellant's life; that such operation might prove fatal, and he had been advised by reputable physicians not to undergo the same.

Upon the application and answer, the cause was submitted to a member of the board who made an award against appellant. Later, upon application for review, an award was made by the full Industrial Board on October 21, 1933, that part of the findings and award of the full Industrial Board pertinent to this decision being as follows:

"And the full Industrial Board having heard the argument of counsel, having reviewed the evidence and the record herein, finds that plaintiff was in the employ of the defendant on September 2, 1932, at an average weekly wage of $14.00; that on that date he received a personal injury by reason of an accident arising out of and in the course of his employment; that the nature of said injury was an inguinal hernia on both the left and the right side; that the defendant had knowledge of said injury and sent plaintiff to a physician; that as a result of said accidental injury plaintiff was partially disabled from the date thereof; that thereafter such action was had before the Industrial Board; that on a hearing before the full board on plaintiff's

application to review an original award on March 20, 1933, it was found that the plaintiff's injuries could be corrected by surgical operation; that the plaintiff could undergo such operation without endangering his life; without any great pain or suffering and that the defendant should proffer plaintiff such surgical and medical attention as is necessary for the correction and cure of plaintiff's injuries and that plaintiff should accept such offer; that on April 3, 1933, that full board made an order that the plaintiff be awarded compensation at the rate of $3.85 a week beginning on September 9, 1932, and to continue so long as plaintiff is partially disabled as the result of said injuries received while in the employ of the defendant on September 2, 1932. It is further found that under said order compensation was paid to April 5, 1933. It is further found that on June 21, 1933, defendant filed its form No. 14, being application for the review of award on account of change in conditions, alleging that the employee without just cause therefor has refused the services of a physician provided by the employer.

### ORDER.

"It is therefore considered and ordered by the Industrial Board of Indiana that defendant shall resume payment of compensation under the order of the board, April 3, 1933, up to and including June 20, 1933, at which time defendant filed its application for the review of an award. It is further ordered that compensation shall be suspended under said order of April 3, 1933, subsequent to June 20, 1933, during such period as plaintiff shall refuse to accept the operative procedure offered by the defendant for the correction of the right and left inguinal herniae which are causing plaintiff's disability.

"It is further ordered that if plaintiff shall accept such operative procedure then from the day that plaintiff places himself under the care of defendant's physician his compensation shall be paid at the rate of $7.00 a week during the disability incident to such operative procedure.

"It is further ordered that in event plaintiff shall accept such treatment then the defendant shall pay the necessary and reasonable medical, surgical, hospital and nurse's services incident thereto."

It is from this final order of the full Industrial Board that this appeal was taken, and the error assigned that the award is contrary to law.

Appellant and appellee both agree that there is but a single question presented in this appeal. In his brief, appellant says:

"This appeal is concerned only with the question of whether or not appellant's refusal of the tendered operation was unreasonable or without just cause."

Appellee says, in its brief:

"As stated by the appellant in his brief, this appeal involves only the question as to whether or not appellant was justified in refusing to submit to surgical operations for the cure of his right and left inguinal herniae."

A summary of the facts will be necessary to an understanding of this case.

Appellee presented, as one of its witnesses, Doctor Sluss, who was the doctor referred to in the letter made part of the answer in this case. Doctor Sluss stated in answer to a question propounded, "Well, my opinion is that he is physically able to undergo an operation for the cure of hernia." On cross-examination, he said, "I expect I did tell Mr. Henry Witte on November 9, 1932, that he was a poor risk for an operation for a double hernia."

Doctor Foster testified as follows upon direct examination:

"I will ask you to tell the hearing member whether or not in your opinion the plaintiff, Henry Witte, could undergo a surgical operation for the cure of hernia, the operation to be performed under local anesthetic?"
Answer: "Why, I think he could."

Upon cross-examination, Doctor Foster said that he came to testify at the request of Foster and Messick,

the agents of the insurance carrier for appellee, and that he was a nephew of the Mr. Foster who is one of these agents.

This is the substance of all the testimony given, in chief, by appellee upon the hearing.

Appellant introduced the testimony of two doctors, one of whom was Doctor McClary, who testified that he was a practicing physician in Evansville, Indiana, and had been for twenty-five years, and had previously practiced at Dale, Indiana, the home of the appellant; that he examined the appellant "last Sunday morning." Quoting from the abstract of the testimony in appellant's brief, the witness further testified that:

"Appellant has a myocarditis, quite a murmur. His heart skips a beat every now and then. The second beat was off possibly two or three times. A short time his blood pressure was 180, which is unusually high. He also has pyorrhea, causing puss through his whole system. When he coughs he finds it difficult to breathe, especially when there is any exertion. I found a double inguinal hernia. One was as large as an egg and the other was very distinct. On coughing you could force it out. He also limped at the time. He was afraid to take an operation and didn't think he could stand the herniotomy. In my opinion he is a poor risk for an operation under any kind of an anesthetic. I would consider him a very poor risk and I have advised him against the operation. A local anesthesia includes a spinal anesthesia and it is dangerous. The danger of a local anesthesia in this case is that appellant has a mild myocarditis, a diseased heart, a weakened condition and it puts him in danger of ever getting off the table alive. It is a dangerous operation with any kind of anesthesia."

On cross-examination, this witness said that he had performed operations for hernia and was connected with Walker Hospital; that any kind of anesthetic, due to his (appellant's) condition, is dangerous; that he has myocarditis, and organic heart trouble.

Appellant also introduced the testimony of a Doctor Lomax, who testified upon direct examination, as set forth in appellant's brief, as follows:

"I am a physician practicing at Dale, Indiana. Appellant was sent to me by his employer. I examined him at that time. I have examined him several times since, the last time being last Friday. His condition is getting worse. I have examined him numerous times. I have doctored his family for a number of years. His physical condition is as follows: He has a myocarditis, an irregular pulse, a mitral murmur. His heart skips a beat now and then, is irregular, has high blood pressure, has pyorrhea, which causes pus in his whole system, has trouble with his bowels, he limps. In my opinion, he is a poor risk for an operation at the present time. The risk of a recovery from an operation is greater when a patient is afraid of the same. I have advised him against the operation. I feel that under no kind of anesthetic could he undergo the operation without risk of life. There would be an appreciable risk."

Upon cross-examination, he said that on September 10, 1932, he suggested that appellant might be operated on and even then he doubted that he could stand the operation; that he has since examined him and found that his condition was worse than at that time, and that he now advised that appellant not have the operation.

Appellant testified in his own behalf that upon receiving his injury his employer sent him to Dr. Lomax, and that he then went to Indianapolis at the suggestion of appellee because he wanted to be operated on, and went to see Dr. Sluss before he went to the insurance agent's office; that Dr. Sluss examined him on behalf of appellee; that Dr. Sluss thought he could stand the operation on one side but would not advise him to have the operation on both sides, and said it was too big a shock for a "man of my age;" that appellant will be 65 years old on next December; that next morning he went to the office of the agent of the insurance carrier of appellee, and

that the agent told him that he had talked the operation over with Dr. Sluss, and that it was too big a risk, and that it was not advisable to operate on him; that he would send the employer a letter telling how he found appellant, and the reason he was not operated upon; that the insurance agent sent appellant a copy of the letter that he sent to his employer (which letter was introduced in evidence). Appellant further testified that he was afraid to have an operation; that, when he came to Indianapolis, he did not know he had herniae on both sides.

On rebuttal, Dr. Sluss testified that he told appellant that in order to be a well man, he would have to be operated on both sides; that the cure of one side would not result in a complete cure, but that he thought that appellant should not be operated on both sides at the same time as it would be too much of a shock for him, and he should have but one side operated on at a time; and he told appellant that he should do whatever Mr. Hart (one of the agents for the insurance carrier) said; that he was of the opinion that appellant could undergo an operation without it being a hazard to his life, "he could not undergo a double operation."

The letter mentioned in the answer as having been written on November 9, 1932, was introduced in evidence. This letter was written by the agents for the insurance carrier of appellee, and the copy of the letter was sent at the same time to the appellant. The substance of this letter was that appellant had been examined by Dr. Sluss, and that it was learned that appellant had a double hernia; that as he was a man 64 years of age, that, while it would be possible to operate for a single hernia and get a good result, "it would be rather a shock for a man of his age to have an operation for double hernia performed." The writer explained to appellant that "we would not assume any

liability for the hernia which was found on the right side anyway, as it cannot be said that this condition was caused by the injury;" and that on account of the condition of appellant it is inadvisable to operate, and "we [meaning the insurance carrier] have nothing else that we can offer."

Since appellee filed its application for review upon the ground of a change of conditions alleging that such change was that the appellant without just cause had refused the services of a physician, the burden was upon appellee to prove such allegation. Section 8 of the Workmen's Compensation Act (Burns Ann. St. Supp. 1929, §9453), provides that no compensation be allowed to anyone who shall wilfully fail or refuse to perform any statutory duty, and that "the burden of proof shall be on the defendant." Section 25 of the Act (Burns Ann. St. Supp. 1929, §9470), also makes it the duty of an employee to accept the services of a physician proffered by the employer, and the Industrial Board may require the employer to furnish such treatment for a limited time, and, if the employer proffers such services beyond the time required by statute, the refusal of the employee to accept such services so provided shall "bar the employee from all compensation during the period of such refusal." We hold that such refusal of the employee must be unreasonable and without just cause.

The acceptance of the services of the physician by the appellant is a statutory duty, and the burden of proving that his failure to accept such services is unreasonable and without just cause is upon the appellee. *Berkey* v. *Chase Bag Co.* (1933), ante 175, 187 N. E. 679.

There are several cases decided by this court which have to do with the question of the refusal of an employee to submit to operations proffered by his em-

ployer. While all of them do not involve the question in this case, still all of them have something to do with the question; hence, we deem it beneficial and advisable to cite them herein. They are as follows: *Bradbury* v. *Hymera Coal & Mining Co.* (1931), 92 Ind. App. 626, 176 N. E. 875; *Enterprise Fence and Foundry Company* v. *Majors* (1918), 68 Ind. App. 575, 121 N. E. 6; *Bloomfield Brick Company* v. *Blaker* (1932), 94 Ind. App. 230, 180 N. E. 501.

The question for this court to determine is, Is there any evidence to show that appellant acted unreasonably and without just cause in refusing to submit to an operation for double hernia as proffered by appellee? and, Is there any evidence to sustain the finding of the board?

This question of the justification of an employee in refusing proffered services of a physician or surgeon tendered by his employer is one of great importance to this court as well as to the Industrial Board. The evidence in this case shows that the surgeon, Dr. Sluss, to whom appellant was sent by appellee's agent to consult him concerning his injuries, did not advise the operation; in fact, the agent of the insurance carrier wrote to the appellee a letter to this effect, and attempted to relieve itself of liability by claiming that this court had at one time held that the only cure for a hernia is an operation, and that, since the advanced years of appellant makes it inadvisable to operate, to use their language, "we have nothing else we can offer." They dismissed the appellant, paid his traveling expenses, and sent him home. Later, when this cause came up for hearing, Dr. Sluss' testimony was somewhat different than that stated in the letter just referred to; however, he qualified his opinion as to the advisability of this operation by saying that he did tell the appellant that he was a poor risk for an operation

for a double hernia and that he did not think he could be operated upon both sides at the same time as it would be too much of a shock for appellant. The other doctor called by appellee testified that he thought appellant could undergo such a surgical operation, but did not say whether he thought it would kill him or cure him. There were two doctors who testified on behalf of appellant, both of whom, as far as the record discloses, were capable and conscientious men in their profession. One of them was the doctor to whom appellant was sent by his employer when he was first injured. Both of these doctors testified that they advised appellant not to undergo an operation in his condition for it might prove fatal. Taking the statements of these doctors and the letter which the appellee's agent wrote to appellant, can it be said that there was any evidence to justify the conclusion of the board that appellant unreasonably and without just cause refused to submit to an operation? We think that there is no evidence to warrant such a finding by the Industrial Board.

The question of whether an employee is justified in refusing to submit to a surgical operation proffered by his employer is one that has to do largely with the personal element. It is the employee upon whom the operation has to be performed, and his rights and interests should be seriously considered.

It would be a strange situation, indeed, when a man of the age of appellant in this case, suffering from inguinal hernia on both sides, with heart trouble, and other maladies, should be compelled to submit to an operation, either under a local or general anesthetic, simply for the purpose of undertaking to diminish the liability of the employer and insurance carrier, when he has been advised by reputable physicians that it would endanger his life.

To borrow the language quoted in a Michigan case, "It would be a harsh rule that bound an employee who had been injured to accept in all cases the dictum of a surgeon who advised an operation." This rule would be especially severe when the employee's own physician and another have told him that the operation was dangerous and would jeopardize his life.

A rule to which this court has adhered consistently for many years, that we will not weigh the evidence where there is a conflict, "unless the evidence is of such a conclusive character as to force a contrary conclusion," has been stated many times by this court. *Goshen Veneer Company* v. *Cozzi et al.* (1931), 93 Ind. App. 160, 164, 176 N. E. 634; *Swing* v. *Kokomo Steel and Wire Company* (1919), 75 Ind. App. 124, 130, 125 N. E. 471; *Roush* v. *W. R. Duncan & Son et al.* (1932), 96 Ind. App. 122, 183 N. E. 410. "However, in order to reach a contrary conclusion, we may not weigh the evidence, nor may we disregard any reasonable inferences which the Industrial Board may have drawn from the facts which the evidence tends to establish." *Swing* v. *Kokomo Steel and Wire Company, supra.*

Applying these well-established rules to the evidence in this case, and having in mind that the issue tendered was whether the appellant without just cause refused the services of a physician provided by the employer, and that under this issue the evidence disclosed that the appellee proffered to appellant a physician for the purpose of operating upon him for an inguinal hernia on both sides, and that the evidence conclusively shows that appellant refused this operation because he had been advised by reputable physicians that it would endanger his life, and because he believed that it would so endanger his life, and from all the facts as shown by the evidence, we are forced to the contrary conclusion from that of the Industrial Board, and

find that the evidence conclusively shows that the appellant was justified in refusing to submit to this operation proffered by appellee, and that there is no evidence to sustain the finding of the board; hence the award is contrary to law.

The award is, therefore, reversed, and the board is hereby ordered to reinstate the award of April 3, 1933, and for such other proceedings as may be necessary, not inconsistent with this opinion.

Kime, J., dissents.