WRIGHT *v.* PEABODY COAL COMPANY.

[No. 28,382. Filed February 2, 1948. Rehearing Denied February 27, 1948.]

680

*Wendell Tennis* and *Martin L. Pigg*, both of Sullivan, for appellant.

*Gambill, Dudley, Cox & Crawford,* of Terre Haute, for appellee.

STARR, J.—The full Industrial Board of Indiana denied appellant compensation for alleged personal injuries claimed to have been received on December 7, 1944, as the result of an accident arising out of and in

the course of his employment with appellee. This award was reversed by the Appellate Court. In due course we granted the appellee's petition to transfer.

The award of the board was to the effect that the appellant take nothing by his Form 9 application filed September 12, 1945. This award was based on the finding that the appellant on December 7, 1944, was in the employ of appellee at an average weekly wage of 34 dollars but the appellant did not on that date sustain accidental injuries by reason of an accident arising out of and in the course of his employment by the appellee.

The sole error relied upon for reversal is that the award is contrary to law. This being a negative finding against the appellant who had the burden of proof, the only question to be decided is whether the evidence entitled him to relief which was denied him by the award. *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. (2d) 905. In order to decide this question it is necessary to examine the evidence.

All the evidence which was heard by the board was substantially as follows: On December 7, 1944, the appellant was in the employ of the appellee at an average weekly wage in excess of 34 dollars and on that date was working in the mine of appellee located in Sullivan County, Indiana. Appellant testified that on that date while so employed he, along with a fellow servant, picked up a 12 foot railroad bar which was quite heavy; that it was their intention to place this bar on a jack; that after he had taken two or three steps with this bar a pain hit him in his back about where his "trouser belt would go around him"; that this pain shot up his back towards the back of his neck; that as a result of said injury he has been incapacitated from doing any physical labor except a little light work

around the house. Appellant's evidence also discloses that prior to this accident he was not afflicted with back trouble and that he now suffers pain in his back and leg when he attempts to stoop or lift anything.

Appellant's testimony was corroborated as to the accident by the testimony of his fellow servant who was working alongside him at the time of the accident. He was also corroborated in other portions of his testimony by his wife who was a witness in his behalf.

One Dr. Russell Lebier testified on behalf of the appellant. The doctor testified that he first examined appellant professionally December 11, 1945, again on March 4, 1946, and on May 13, 1946; that the appellant was complaining at the time he came to see him of pain in his back on the right side lateral to the lumbar spine around the fourth and fifth lumbar vertebrae; that this pain tended to be recurrent; that the appellant stated the pain was made worse by bending or attempting to lift or strain, there was also an atrophy of the right leg and numbness over his rump region, right thigh and right calf; that from his examination, which also included an x-ray of the lumbar spine which had been taken by another physician, he was of the opinion that the appellant is suffering from a rupture of an intervertebral disc which he attributes to the appellant's injury.

In pursuance to appellee's request to have appellant examined by a disinterested doctor, the board arranged to have Dr. E. Vernon Hahn examine appellant, which examination was made June 18, 1946. Dr. Hahn rendered his report by way of a deposition filed in this cause which deposition, upon motion of the appellant, was published and read in evidence. From his examination the doctor was of the opinion that the appellant was suffering from a ruptured intervertebral disc or

discs. In this deposition the doctor states that the appellant, during the examination, gave a history of having been injured while assisting a co-worker in carrying a heavy object; that in so doing he accidentally stepped into a hole which allowed his end of the object to slip; that he made an effort to catch it and in so doing he wrenched his back; that at the time he suffered a sudden severe pain in the lower part of his back which pain radiated up to his shoulders; that since that time he has never been free of pain in the lower region of his back; that sometime after the accident, pain began to radiate into the right lower extremity; that he has experienced numbness in the lateral aspect of the right leg and thigh and this has varied considerably in intensity; that coughing or straining made his right lower extremity feel strange; that his right lower extremity feels weak, particularly in stepping up, and that there is a strange "pulling down" feeling in his rectum; that there is a spine tenderness in the lumbo-sacral joint; that forward bending, according to the patient, produced pain at the lower back region with radiation to the lower right extremity. Bending to the right produced pain in the lumbo-sacral region. Straight leg raising on the right produced pain in the calf of the right leg. On the left side straight leg raising produced no discomfort. Rotating of the right hip produced discomfort in the lumbo-sacral region on the right side. Inspection of the lower extremities showed definite but slight atrophy in the lower thigh and the leg muscles of the right side; that the x-ray of the lumbar spine showed congenital conditions which are not related to the patient's symptoms. Tests of sensation showed no impairment except for a slight reduction on the lateral side of the right foot. The examination of the reflexes showed no impairment except the right ankle jerk was

definitely less than the left, otherwise the neurologic examination was entirely negative. It will be seen that Dr. Hahn's opinion is based very largely upon subjective symptoms and the history of this case as given to him by the appellant.

The appellee in its defense of this case produced the testimony of three medical witnesses as follows:

Dr. F. M. Duke testified that the appellant came to him on December 10, 1944, three days after the alleged accident, and that he complained of pain in the side and bleeding from the bowel; that the history of the accident and the pain complained of were not such as to call for an examination of the plaintiff's back and that the doctor would have made an examination of the plaintiff's back had the appellant, by his statements, given him any grounds for such examination; that he could not connect appellant's symptoms with the accident that appellant described. He also testified that the appellant did not give him the same history of the accident when he came to him for treatment that he gave to the witness, Dr. Hahn, in June, 1946.

Dr. J. H. Crowder testified that appellant first came to him on January 29, 1945, and that he was then suffering from internal hemorrhoids, a slight swelling of the prostate and slight oozing of blood from the hemorrhoids; that at that time there was no evidence of injury; that he again saw appellant on February 3, 1945, and he was complaining of a great deal of pain in the region of the rectum; that he then took x-ray films of the lumbar vertebrae, the pelvis, and the sacrum, and that these films were negative for injury and that in his opinion appellant was not suffering from a ruptured disc on January 29, and February 3, 1945; that the pain and symptoms which appellant then complained of were due to hemorrhoids and prostate con-

dition. Dr. Crowder also testified that the history of the accident as given by the appellant to the witness, Dr. Hahn, did not correspond to the history appellant gave to him on January 29, 1945; that at that time appellant told him that he lifted a steel bar and he experienced a pain in the region of the rectum and that he consulted Dr. Duke on the 10th of December; that he further stated that five days after this experience he had some bleeding from the rectum. Dr. Crowder's record of this case, which was in writing, does not disclose any history that the appellant wrenched his back by stepping into a hole or that at the time he sustained this accident he suffered a severe pain that radiated up into his shoulders.

Dr. M. C. Topping testified that he saw appellant professionally on February 10, 1945, and at that time appellant stated to him, "The only thing that bothers me now is my rectum. My back hurt me for a while. Now it is just my rectum. It just aches. Have kind of pulling down feeling, drawing up here on the base. Some days it is pretty bad. Now it feels better again. I never had any trouble with my rectum before and I would be in good shape now if it was not for that." That the doctor received no history or complaint to indicate an examination of the back in the lower lumbar region; that in his opinion the appellant, at the date he examined him, was suffering from chronic inflammatory disease of the prostate gland, and was not suffering from an intervertebral ruptured disc; that the appellant gave him no symptoms which are ordinarily related to ruptured intervertebral discs; that although he made no examination to determine whether or not the appellant had a ruptured invertebral disc, yet he could conclusively determine in this case, without such examination, whether or not the appellant was

suffering from such an injury as "no man who is going to a doctor for relief from symptoms and has a ruptured intervertebral disc would go to that doctor and make no mention of any pain in his back or any changes in the feeling in his legs, or any of the other symptoms which are ordinarily related to a ruptured intervertebral disc."

It must be borne in mind that the finding of the board in this case is a negative finding and it cannot be attacked upon the ground that there is a lack of evidence to support it, as a decision against the party having the burden of proof does not rest upon the quantum of evidence. *Wilson, Admx.* v. *Rollings, supra.*

The award of the board cannot be set aside in this case unless all the evidence is undisputed and not contradicted and leads inescapably to the sole conclusion that the appellant was entitled to an award under our Workmen's Compensation Act. *Krentz* v. *Ferguson Coal Co.* (1926), 85 Ind. App. 347, 154 N. E. 35; *Heflin* v. *Red Front, etc.,* (1947), 225 Ind. 517, 75 N. E. (2d) 662. It is the law of this state that a *prima facie* case must always prevail in the absence of countervailing proof or in other words where the evidence in the record is all one way its effect becomes a matter of law even in favor of the plaintiff to recover. *First Nat. Bank* v. *Farmers, etc.,* (1908), 171 Ind. 323, 86 N. E. 417; *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577. See also *Dockerty* v. *Hutson* (1890), 125 Ind. 102, 25 N. E. 144; *Carver* v. *Carver* (1884), 97 Ind. 497; *Riley* v. *Boyer* (1881), 76 Ind. 152. But the facts in this case which would warrant a recovery on the part of the appellant were not established without controversy or opposing testimony. Appellant's evidence as to injury was disputed by opposing testimony.

Also there was evidence from which the board could have determined that appellant had given different histories of his injury and different symptoms of the same. These variations and contradictions might well have been considered in determining the weight to be given to appellant's testimony even to the point of rejecting it as to the item of injury. Of course the trier of facts cannot arbitrarily reject items of oral evidence but, even though a particular item of evidence is not expressly or directly contradicted, this does not prevent the trier from taking into consideration all of the other evidence including circumstances and surroundings that might in any way affect the weight or credibility of such evidence, and the trier may disregard oral evidence if considered unreasonable or inconsistent with facts and circumstances shown by the other evidence in the case. *McKee* v. *Mutual Life Ins. Co., etc.,* (1943), 222 Ind. 10, 51 N. E. (2d) 474; *Wm. P. Jungclaus Co.* v. *Ratti* (1918), 67 Ind. App. 84, 118 N. E. 966.

The judgment of the Appellate Court is hereby reversed and the Appellate Court is ordered to affirm the award of the Industrial Board of the State of Indiana.

Gilkison, J., and Emmert, C. J., dissent.

NOTE.—Reported in 77 N. E. (2d) 116.

## DISSENTING OPINION

GILKISON, J.—I am unable to agree with the opinion in this case. My dissent is based upon the following reasons:

Of course, only the competent evidence most favorable to the award, including reasonable inferences that may be drawn therefrom, may be considered by this court in determining its correctness. I shall not attempt to weigh competent conflicting evidence, since that is wholly for the trial court, in this case, the Industrial

Board. This rule of law is too well known to require the citation of authorities. But if the competent evidence is of such a conclusive character as to compel a conclusion contrary to that reached by the Industrial Board, then it is the duty of the Appellate Court on appeal to reverse the award because of the insufficiency of the evidence to sustain it, and because it is contrary to law. *Witte* v. *J. Winkler & Sons, Inc.* (1934), 98 Ind. App. 466, 477, 190 N. E. 72; *Cunya* v. *Vance* (1935), 100 Ind. App. 687, 691, 692, 693, 197 N. E. 737; *Staley* v. *Indianapolis Coal Co.* (1935), 101 Ind. 335, 338, 339, 197 N. E. 713.

We are, therefore, required to examine the evidence for the purpose only of ascertaining if there is *competent evidence* upon which to base the finding and award.

The evidence is quite conclusive that appellant was injured while at work in defendant's mine on December 7, 1944. Appellant testified that he and a fellow-workman, Melvin Adams, picked up a steel bar about 12 feet long that would weigh about 320 pounds, and had to take two or three steps with it, and the pain struck him in the back about the belt line and shot up between the shoulders to the back of his neck. He could lift it no higher and his "buddy" had to lift it on the jack. He reported his injury to the room boss about a half or three-quarters of an hour later. He went to see Dr. Dukes the following Sunday, and went to see him again when the superintendent gave him a slip to go. Later the superintendent asked him what Dr. Dukes did for his back, and said: "He isn't giving you no medical attention. I will send you to another doctor." He sent him to Dr. Harry Crowder, who saw appellant three or four times and treated him "with salve like Dr. Dukes did", and then sent him to Dr. Topping at

Terre Haute. Dr. Topping sent him to a Dr. Ney, who told him "not to come back, he did not know what was the matter with me." Dr..Ney was an urologist and was not a witness in the case.

Melvin Adams, appellant's fellow-workman, corroborated appellant fully with respect to his injury, and there is no evidence to the contrary whatever.

Appellant's medical evidence is fairly summarized in the majority opinion. I desire to add, that Dr. Hahn's evidence contains this statement: "On examination of the spine I found tenderness on deep pressure immediately to the right of the lumbosacral joint. Abrupt pressure at that point produced pain which the patient stated radiated into his right upper thigh." Dr. LaBier on his examination of appellant's spine discovered the same tender spot. These two are the only doctors who ever examined the patient's back and, of course, are the only ones to find the point of injury. I call attention to these additional facts that there may be no doubt that appellant made a strong *prima facie* case.

If there is any competent evidence to support the finding of the Board it must be found in the evidence of Dr. Dukes, Dr. Crowder, or Dr. Topping.

Dr. Dukes testified that when appellant first came to him on December 10, 1944, "he complained of pain in the left side, bleeding from the bowel, and he contended at that time he received an injury while working at the Peabody Coal Company." Answering a further inquiry this doctor said: "Well it seems to me he was struck on the back." So, from his own evidence, it seems clear to me that the doctor cannot be truthful when he said "that the history of the accident and the pain complained of were not such as to call for an examination of the plaintiff's back and that the doctor would have made an examination of the plaintiff's back

had the appellant, by his statements, given him any grounds for such examination;" as stated in the opinion. Surely if the patient came to the doctor to be treated for injuries received when he was struck on the back at the coal mine, the desirability of an examination of the injured back must have occurred to the doctor. There is no factual basis in the record for the statement attributed to Dr. Dukes in the opinion that "appellant did not give him the same history of the accident when he came to him for treatment that he gave to the witness, Dr. Hahn in June, 1946." But if there were a basis for such a statement, such a discrepancy would afford no foundation whatever for holding that there was no such injury sustained by appellant, both doctors having received substantially the same history of the injury—an injury to his back about the belt line.

Dr. Harvey Crowder testified when asked "Doctor, at the time this man came to you did you have a history at that time of him having sustained an injury on the 7th of December, 1944? A. Yes, he told me while timbering, putting up a steel bar with another employee that he hurt his back and rectum."

After this information the doctor took an x-ray film of the lumbar vertebrae, pelvis and bones in that region which he interpreted as negative. The doctor said that the ordinary x-ray would not necessarily reveal an injured or ruptured intervertebral disc. Aside from this film, the only examination given the patient was an examination of the rectum for hemorrhoids, and further for possible prostate trouble. He made no examination of the back at all. His excuse for failing to make this obviously essential examination is, that the patient told him that his back hurt him for awhile, but that at the time of the examinaion the pain was at or about the rectum. I am unable to believe that a doctor acting in

good faith, by a simple statement of symptoms like this by an injured workman, would permit himself to be diverted from a physical examination which was being made to determine the fact of an injury to the back and the nature thereof, and cause him to examine only the rectum and stress the symptoms without even examining the cause. From the examination given by this doctor as above condensed and as more fully detailed by the record it would have been rather miraculous if he could have found anything wrong with appellant's back, and especially if he could have found anything as hidden and elusive as a ruptured intervertebral disc. Manifestly the opinion of Dr. Crowder based solely upon the film he took and upon his own examination of the patient's rectum, without any examination of his allegedly injured back, was wholly without probative value in the case.

Dr. M. C. Topping testified that he examined appellant February 10, 1945, and that he then got a history of an accident to him on December 7, 1944. He said the patient told him: "My back hurt me for awhile, now its just my rectum." The doctor based his opinion that the patient did not have a ruptured intervertebral disc, wholly because, to use his own language: "No man with a ruptured intervertebral disc in my opinion would go to a doctor and not make complaint of it." It will be noted that the doctor already had a history of the accident and that the patient then told the doctor that his back hurt him for awhile. Then the doctor just examined the patient's rectum and referred him to an urologist. It is apparent that the doctor's opinion that the patient was not suffering from an injured intervertebral disc, was based upon no substantial facts whatever. All that I have said concerning Dr. Duke's and Dr. Crowder's examination and opinion applies with equal

force to the examination and opinion of Dr. Topping. In giving his opinion Dr. Topping seems to have forgotten that the patient told him his back hurt him for awhile after his injury on December 7, 1944, for he says if the patient had a ruptured disc he would surely make complaint of it when he went to a doctor. To me it seems that any person would know if he got his back hurt,. but it is unlikely he would know the nature of the injury. Most persons would have to go to a doctor and have.the doctor tell them the nature of the injury especially if they had a ruptured disc. However, the doctor bases his opinion upon his own statement that appellant did not tell him he got an injured back in the accident. The doctor's own evidence conclusively shows that this negative statement is untrue.

The opinion of neither of these three doctors was based upon any fact testified to by them, material to the case, nor from any examination by them of the injured back complained of. Nor was either based upon any hypothetical facts whatsoever. They were based on nothing material to the inquiry as to whether the appellant received a ruptured intervertebral disc while working for appellee. On the contrary, each is a mere guess, based wholly on conjecture. Each is wholly nebulous. Each would have the same value, if it were based on an examination of the patient's inner ear, his eyes, his tonsils or his teeth. Surely no court should be deceived by such opinion evidence.

Without exception the law seems to be that "where the evidence does not disclose the existence of sufficient data on which to base a reasonable judgment, the opinion is incompetent." 32 C. J. S., *Evidence,* § 521, p. 219. *Commercial Union Assurance Co.* v. *Pacific Gas Electric Co.* (1934), 220 Cal. 515, 524, 31 P. (2d) 793.

"While absolute certainty is not required of an expert, it is necessary that the facts on which an expert relies for his opinion should afford a reasonably accurate basis for his conclusions. Accordingly, no matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture; in other words, the factual foundation for the expert opinion must not be nebulous.

32 C. J. S., *Evidence*, § 522, p. 220. 20 Am. Jur., *Evidence*, § 795, p. 667; *Stevens* v. *Illinois Central R. R. Co.* (1922), 306 Ill. 370, 137 N. E. 859; *Myers* v. *Shell Petroleum Corp.* (1941), 153 Kan. 287, 302, 110 P. (2d) 810; *Kanne* v. *Metropolitan Life Ins. Co.* (1941), 310 Ill. App. 524, 530, 531, 34 N. E. (2d) 732; *O'Donnell* v. *Snyder* (1924), 231 Ill. App. 581; *Ehrhardt* v. *Connecticut Fire Ins. Co.* (1920), 219 Ill. App. 48, 51, 52; *Sweeney* v. *Blue Anchor Beverage Co.* (1937), 325 Pa. 216, 222; 189 A. 331, 334; *Housman* v. *Geiman* (1934), 62 S. D. 310, 252 N. W. 857; *Eggers* v. *Eggers* (1887), 57 Ind. 461, 464.

It has been stated as the law that,

"When the facts upon which the opinion of an expert is based are highly speculative and conjectural, the jury would not be relieved from the necessity of reaching an arbitrary conclusion. The result is such expert testimony cannot be permitted to form the basis of a verdict."
*Myers* v. *Shell Pet. Corp.* (1941), 153 Kans. 287, 302, 110 P. (2d) 810.

In other words such evidence is incompetent and therefore no finding or verdict can lawfully be based thereon.

In a situation like that presented in this case, the law has been well summarized and stated thus:

"Since an administrative finding not supported by evidence is arbitrary and unauthorized, the question whether a finding is supported by evi-

dence is one of law subject to judicial review and independent determination by the court, and this so even though the statute providing for judicial review makes no provision for review of the evidence."

42 Am. Jur., *Public Administrative Law,* § 287, p. 644; *Todd* v. *Furniture Co.* (1925), 147 Md. 352, 359, 128 A. 42; *Moore* v. *Clark* (1936), 171 Md. 39, 45, 46, 187 A. 887, 107 A. L. R. 924; *Harrison* v. *Central Construction Co.* (1919), 135 Md. 170, 180, 108 A. 874, 888.

In Indiana the rule has been well stated thus:

"In the final analysis, the finding of an administrative agency will not be disturbed when it is subjected to the scrutiny of a judicial review, upon the claim that it is not supported by the evidence, *unless it is made to appear that the finding does not rest upon a substantial factual foundation.* This may be determined from a reexamination of the evidence upon which the administrative agency acted, or by the original reviewing court hearing evidence, depending upon the legislative scheme upon which the agency operates. . . . If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the *quantum* of legitimate evidence was so proportionately meagre as to lead to the conviction that the finding does not rest upon a rational basis; or that the result of the hearing must have been substantially influenced by improper considerations, the order will be set aside, not because incompetent evidence was admitted, but rather because the proof, taken as a whole, does not support the conclusion reached." (My emphasis.)

*Warren* v. *Indiana Telephone Co.* (1939), 217 Ind. 93, 118, 26 N. E. (2d) 399.

It has been held and seems to be the established law in all jurisdictions where the question has been presented that:

"Declarations made by one injured, to his attending physician, are admissible in evidence when they relate to the part of the body injured and his symptoms and sufferings, because a physician is necessarily guided to some extent by such information, free from suspicion of being spoken with reference to future litigation, but the statements are not competent if they relate to the cause of the injury."

*Peoria Cordage Co.* v. *Industrial Board* (1918), 284 Ill. 90, 119 N. E. 996; L. R. A. 1918E, p. 822, and many cases there cited.

And quoting again from the same case:

"The court, however, is charged with the duty of determining whether there is any competent evidence sufficient to sustain an award, which must rest upon competent and legal evidence and not be based upon mere conjecture, suspicion or surmise."

See also *Reck* v. *Whittlesberger* (1914), 181 Mich. 463, 467, 470, 148 N. W. 247; *Goelitz Co.* v. *Industrial Board* (1917), 278 Ill. 164, 168, 115 N. E. 855.

In determining this fact this court must determine whether the findings of the Industrial Board rest upon "competent and legal evidence, as tested by the elementary and fundamental principles of judicial inquiry." *Goelitz* v. *Industrial Board, supra,* page 168. *Savoy Hotel Co.* v. *Industrial Board* (1917), 279 Ill. 329, 334, 116 N. E. 712.

It seems evident to me that the physical examination given to appellant by the three doctors to whom appellee sent him for such examination, cannot form a substantial basis for an opinion as to whether he had or had not an injured back as claimed by him. Any statement he may or may not have made to these doctors concerning how he received the injury was wholly incompetent evidence. The opinion allows what one of

the doctors does not remember of appellant stating to him, and what another doctor untruthfully says he did not state to him as a basis for an inference upon which to base an opinion that he did not receive an injury to his back as alleged. In fact the factual foundation for all appellee's expert opinion evidence is wholly nebulous. Apparently it has been carefully planned that way. It therefore is wholly invalid. Since appellant's evidence is competent, clear and conclusive on every material issue, I am compelled, under the rules heretofore stated, to come to a conclusion contrary to that reached by the Industrial Board.

The decision of the Industrial Board should be reversed, and the decision of the Appellate Court [73 N. E. (2d) 692] should be affirmed with a corrected mandate.

(EMMERT, C. J., concurring.)